**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **GS HOLISTIC, LLC,** | : | **CASE NO. 3:23-cv-00317** |
| **Plaintiff,** | : | **District Judge Walter H. Rice**<br>**Magistrate Judge Michael R. Merz** |
| **v.** | : | |
| **PQR ENTERPRISE, INC., et al.,** | : | |
| **Defendants.** | : | |

MOTION OF DEFENDANTS PQR ENTERPRISE, INC. AND MAHMOUD WAHDAN FOR ATTORNEY FEES AND SANCTIONS PURSUANT 15 U.S.C. § 1117, 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY; MOTION FOR LEAVE TO FILE IN EXCESS *INSTANTER*

Defendants PQR Enterprise, Inc. ("PQR") and Defendant Mahmoud Wahdan ("Wahdan") (collectively "Defendants"), through counsel, hereby move the Court for attorney fees, costs of suit, and sanctions pursuant to this Court's inherent authority, 15 U.S.C. § 1117, and 28 U.S.C. § 1927 as against both Plaintiff GS Holistic, LLC ("Plaintiff") and Plaintiff's counsel Eddy Leal ("Plaintiff's counsel"). Throughout the course of this litigation, both Plaintiff and Plaintiff's counsel have made material misrepresentations to the Court, abused the litigation process, and have been sanctioned in numerous other U.S. District Courts across the country for the same repeated violations that occurred in this case. As a result of Plaintiff's abuse of the litigation process against Defendants, PQR has essentially gone out of business due to this litigation, which

Plaintiff basically forewarned would occur in the cease-and-desist letters sent to Defendants prior to the commencement of litigation. Plaintiff has done nothing more than use its trademark as a weaponization tactic against innocent small businesses and their owners throughout this entire country for the past three (3) years, reaping substantial profit.

Through its nationwide campaign of trademark "enforcement," Plaintiff relies on sending threatening (and ethically questionable) cease and desist letters to coerce settlements with small businesses who can seldom afford counsel to adequately respond or defend themselves. If Plaintiff does not receive a response it subsequently files a federal trademark infringement action, obtains extensive default judgments, and then requests exorbitant statutory damages from Defendants' failure to respond. In both this case, and its sister case *M.W. & Sons, Inc.*, Case No. 3:23-cv-00249, there were substantial questions as to whether or not Defendants were ever properly served in the first place.

Despite these discrepancies and lack of valid service, and without checking to ensure service had even been perfected, Plaintiff moved for default judgment in both cases. In both this case and its sister case, when it came time to actually litigate, Plaintiff failed to ever issue discovery (even to obtain a modicum of financial information) but then requested the Court to impute income from a boilerplate expert report utilizing methodology which relied upon subjective economic data from States wholly unaffiliated with Ohio. That Motion for Default Judgment also represented to the Court that Plaintiff had been awarded statutory damages in excess of $150,000.00 in U.S. District Courts throughout the country. What Plaintiff and Plaintiff's counsel failed to disclose, however, is that some of those damage awards had actually been overturned or vacated – a direct misrepresentation in a pleading filed in this Court. Plaintiff and Plaintiff's counsel still represented to the Court that those judgments were valid and in good standing.

After Defendants' depositions and the deposition of Plaintiff's corporate representative, Plaintiff should have withdrawn its claims against Wahdan in his individual capacity as his own testimony proved he had absolutely no knowledge, foresight, or intent to infringe Plaintiff's trademark. After the deposition of Plaintiff's corporate representative, Christopher Folkerts ("Folkerts"), Plaintiff should have withdrawn its remaining claims against PQR because it could not show justifiable and/or quantifiable damages a requirement under pre-existing, binding precedent in the Sixth Circuit. Plaintiff and Plaintiff's counsel failed to do so.

Most importantly, however, is that the basis of Plaintiff's damages cannot be properly quantified, as proven in Folkerts' deposition and directly stated by Plaintiff's expert in his expert report. Plaintiff failed to provide a single, concrete number that linked any lost profits to any of the Defendants, let alone the plethora of cases existing in the State of Ohio filed by Plaintiff. This litigation, and frankly all pending litigation by Plaintiff in the Southern District of Ohio, is frivolous at best and cannot reasonably be sustained in good faith. For these reasons, among others which will follow, Defendants should be awarded their reasonable attorney fees, court costs and expenses, as well as sanctions against both Plaintiff and Plaintiff's counsel. A memorandum in support follows.

Respectfully submitted,

FREDRIC L. YOUNG (0059544)
CARIN E. BIGLEY (0090231)
GREEN & GREEN, Lawyers
800 Performance Place
109 North Main Street
Dayton, Ohio 45402
Phone: (937) 224-3333

Fax: (937) 224-4311
E-mail: flyoung@green-law.com
cebigley@green-law.com
*Attorneys for Defendants,*
*PQR Enterprise, Inc. and Mahmoud Wahdan*

MEMORANDUM

## I. INTRODUCTION

The circumstances regarding Plaintiff's and Plaintiff's counsel's actions and demeanor throughout this litigation is not an isolated incident or mere error of pleading. Both Plaintiff and Plaintiff's counsel's behavior reflects a nationwide pattern of filing meritless litigation for alleged Lanham Act violations of a trademark that possesses minimal brand recognition on behalf of a corporation with negative profits; pursuing unsupported claims after repeated judicial notice of deficiencies; failing to comply with court orders; and unnecessarily multiplying and exacerbating litigation. As a result of both Plaintiff and Plaintiff's counsel's behavior in this case, PQR has essentially gone defunct (and will soon be dissolved) and Wahdan has been forced out of business ownership. Defendants have incurred litigation costs far beyond what is, and was at all relevant times, both reasonable and necessary should this litigation progressed as a normal, typical litigation case – a fact which Plaintiff's prior counsel, Attorney Alexa Penalta ("Attorney Penalta") "foreshadowed" in one of her demand letters to Defendants prior to the commencement of suit.[1]

This Court possesses inherent authority to award Defendants damages, attorney fees, sanctions, and litigation expenses and costs due to both Plaintiff and Plaintiff's counsel's conduct. In addition to the Court's inherent authority, the Court may award Defendants attorney fees, litigation expenses, and sanctions under 28 U.S.C. § 1927 and 15 U.S.C. § 117(a). This Court also may issue sanctions sua sponte under Civ. R. 11(c)(3). Under 15 U.S.C. § 117(a), the Lanham Act

[1] Defendants hereby incorporate by reference their Motion for Summary Judgment as if fully restated herein, including all Declarations and Exhibits thereto.

provides the power of a Court to award fees for "exceptional cases." Both this case and its sister case, *M.W. & Sons*, rise to the level of exceptional cases because the facts as ultimately proven show that the damages calculations by Plaintiff's own expert were not even remotely close to Plaintiff's and Plaintiff's counsel's affirmative assertions to this Court that Plaintiff was entitled to the punitive, highest statutory award under the Lanham Act. In fact, Defendants' cases provide direct proof that Plaintiff has been using the federal litigation process for several years to profit off of a trademark that holds minimal, if any, tangible value at all.

Of particular note, amongst *only* the fifty-four (54) cases directly identified by Plaintiff in its Motion to Dismiss, Plaintiff has obtained default judgment awards across the country worth approximately $8.1 million over the course of four (4) years. (Exhibit 1 – Summary of Default Judgment Cases in Exhibit C of Plaintiff's Mtn. to Dismiss). Based on a simple PACER search, since 2022, Plaintiff has maintained 1,001 cases alleging trademark infringement in federal district courts across the United States. In multiple cases, across many jurisdictions, both Plaintiff and Plaintiff's counsel have either been sanctioned or expressly warned by federal judges to discontinue participating in certain conduct during the litigation process.

Clearly, neither Plaintiff nor Plaintiff's counsel have sufficiently comprehended the message that several Judges have conveyed. Defendants seek attorney fees and sanctions awarded against Plaintiff and Plaintiff's counsel both jointly and severally, not simply in light of their continued patterns and practices in federal courts across the country, but with the intent to actually deter Plaintiff and Plaintiff's counsel from their ongoing sanctionable conduct. Perhaps under these circumstances, both Plaintiff and Plaintiff's counsel will finally comprehend (and respect) the multiple direct warnings and Court Orders issued by federal district court judges across this nation for the past four (4) years.

## II. APPLICABLE FACTS AND PROCEDURAL HISTORY

A. Plaintiff's and Plaintiff's counsel's sanctionable conduct are a nationwide pattern and practice of improperly manipulating federal trademark laws which unquestionably demonstrate the intent to obtain substantial default judgments against individuals and small businesses on a high volume scale.

As previously discussed, this case is not an isolated event. There has been no reasonable or practical error of judgment or any good faith effort to expand existing precedent by either Plaintiff or Plaintiff's counsel. Simply put, this is a nationwide abuse of the federal litigation process. The fact that Plaintiff and Plaintiff's counsel have received multiple warnings and sanctions in several jurisdictions provides direct proof that neither those sanctions nor warnings were heeded or respected. Despite this, Plaintiff's counsel has continued pursuing a high volume of alleged trademark infringement cases on behalf of Plaintiff using the same patterns and tactics that got them both sanctioned in the first place – to avoid continued oversight, they simply file in a different jurisdiction (i.e. forum shopping). This behavior goes far beyond an attorney's ethical obligation to "vigorously" represent his / her client. This behavior is, and should be, sanctioned.

Since 2022, numerous U.S. District Courts across the country explicitly warned Plaintiff and Plaintiff's counsel about their litigation conduct and/or sanctioned them for it. In 2023, Honorable Judge Virginia M. Hernandez granted defendants' Motion for Sanctions under both Civ. R. 11 and 28 U.S.C. § 1927. *GS Holistic, LLC v. Brother Pastor*, LLC, M.D. Fl. No. 8:22-cv-2179-VMC-TGW, 2023 U.S. Dist. LEXIS 106436 at 14. In *Brother Pastor*, Plaintiff and Plaintiff's counsel brought a trademark infringement suit "without any objective evidence of trademark infringement." *Id*. at 12. Attorney Penalta "knew for months prior to the filing of the complaint that her client did not have a claim against Defendants." *Id*. at 12-13. Even after receiving information that both its factual contentions and legal claims were not viable, Plaintiff and Plaintiff's counsel continued to pursue the claims anyway." *Id*. at 13.

> "Put simply, [Attorney] Penalta has wasted both Defendants' and the Court's time and made misrepresentations to the Court which were objectively frivolous and which she knew to be false…At no point did she seek to remedy the blatant factual errors in the complaint. Instead…she continued to pursue a case she knew had no factual or legal basis."

*Id*. at 14. In her subsequent decision in determining the amount of attorney fees and sanctions to award, Judge Hernandez acknowledged that, "[t]he purpose of [Section] 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them." *GS Holistic v. Brother Pastor, LLC*, M.D. Fl. No. 8:22-cv-2179-VMC-TGW, 2023 U.S. Dist. LEXIS 156712 at 20. Judge Hernandez further stated, "**[h]ere, the need for deterrence is strong.** The Court notes that GS Holistic is a frequent litigant, having filed **forty-seven cases in the Middle District of Florida alone and approximately seven hundred cases across the country.** Given its frequent resort to the federal courts, **it is imperative that GS Holistic comport itself in accordance with Rule 11 in other pending and future cases.**" *Id*. (**Emphasis added**).

In 2023, Magistrate Judge N. Reid Neureiter ordered Plaintiff's counsel and a corporate representative to appear in person at a show cause hearing[2] and prove,

> "[W]hy all trademark cases filed in this District by GS Holistic since June 15, 2023…should not be stayed pending submission of a written verification, under oath, that the Plaintiff of Plaintiff's representative has engaged in good faith, meaningful negotiations to resolve the instant dispute with each specific defendant, and that those negotiations have failed.
>
> "The filing of fifty-plus nearly identical copy-cat lawsuits (all by a single lawyer), presumably without any pre-suit effort at resolution, imposes an extraordinary burden on the judicial system and raises legitimate questions about whether the lawsuits are being brought in good faith or are, instead, a means of litigation blackmail filed by a trademark "troll." See *Malibu Media, LLC v. Doe*, No. 15 Civ. 4369 (AKH), 2015 WL 4092417 (S.D.N.Y. July 6, 2015) (explaining, in the adult-film copyright context, that the 'paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.") (Other citations omitted).

---

[2] Because *ANJ Enterprises* is still pending resolution, there is no final Court Order in LEXIS. Therefore, all relevant pleadings have been pulled directly from PACER and are attached hereto as Exhibit 2.

> "For a single lawyer to bring more than fifty lawsuits within a short period of time raises substantial doubt about the ability of Plaintiff and its Colorado counsel to actively pursue these cases through the full litigation process…[Based on Plaintiff's counsel's early requests to extend scheduling deadlines]…[t]his creates suspicion that Plaintiff and its counsel lack the means or the desire to actually pursue through the normal litigation process…"

(Exhibit 2 – *GS Holistic, LLC v. ANJ Enterprises, LLC*, Dist. Colo. No. 1:23-cv-01658-RMR-NRN, Doc. 14, Or. to Show Cause (Aug. 22, 2023)).

Ultimately, Plaintiff and Plaintiff's counsel appeared and the Court permitted them to move forward with their claims. However, the docket becomes interesting upon an examination of Plaintiff's Motion for Default Judgment, which is almost identical to those filed in this case and its sister case. Plaintiff even attached an almost identical report by the same expert witness, utilizing the same methodology, and concluding that Plaintiff was entitled to the highest award of statutory damages for a "deterrence" effect. (Exhibit 2 – *ANJ Enterprises*, Doc. 64-5 at 3 (May 25, 2026)). The only material difference is the ultimate profit calculation was inferred via a much broader region: Colorado, Idaho, Montana, Wyoming, Utah, Arizona, New Mexico, and Nevada. (Id. at 9). Oddly, the expert only identifies two (2) states: Idaho and Montana, of which it utilized direct profit / revenue information for his calculations. (Id.). Shortly after moving for default, an Amicus Brief was filed, discussing the egregiousness of Plaintiff's damages requests across the country and urging the Court to award minimal damages to Plaintiff, even if it determined defendants were in default. (Exhibit 2 – *ANJ Enterprises*, Doc. 70 (July 8, 2026)).

In the Northern District of Ohio, under Honorable Judge James Carr, dismissed Plaintiff's claims against the corporate officer defendant in his individual capacity because all of the allegations contained in the complaint were conclusory. *GS Holistic, LLC v. Express Smoketown, Inc.*, N.D. Oh. No. 3:23-cv-02040, 2024 U.S. Dist. LEXIS 1140090 at 12-13. In doing so, Judge Carr made an express warning,

> I am aware that GS has filed at least four other very similar complaints in this district, three of which GS voluntarily dismissed. And in his motion, [defendant] draws my attention to other very similar complaints from GS in courts across the country. One court dismissed GS's complaints in several cases after GS's counsel repeatedly failed to follow the local rules. *GS Holistic, LLC v. Kinder Combs 7 LLC*, No. 22-cv-1206, 2023 U.S. Dist. LEXIS 139045, 2023 WL 5104701, at *1 (M.D. Fla. Aug. 9, 2023). In another case, GS filed a motion to dismiss its claim voluntarily because 'the correct cause of action . . . was not trademark infringement, but rather patent infringement.' *GS Holistic, LLC v. Brother Pastor LLC*, No. 22-cv-2179, 2023 U.S. Dist. LEXIS 106436, 2023 WL 4082027, at *4 (M.D. Fla. June 20, 2023). The court in that case also sanctioned GS's counsel for suing 'without any evidence of trademark infringement' and for failing to 'change course after receiving further information that its factual contentions and legal claims were not viable.' 2023 U.S. Dist. LEXIS 106436, [WL] at *5. I trust that in this case, all parties will heed our Local Rules, efficiently prosecute any plausible claims they wish to bring, **and appropriately abandon any claims that are or become implausible. I also warn all parties that a failure to do so may result in sanctions.**"

*Id*. at 13. (**Emphasis added**). Therefore, as of 2024, Plaintiff and Plaintiff's counsel were on direct notice by our sister District Court in Ohio that it could not sustain a trademark infringement against an individual corporate officer in the exact manner it did in this case and its sister case, *M.W. & Sons.* Despite this knowledge of prior precedent, Plaintiff and Plaintiff's counsel moved its tactics to this Court and brought suit anyway. Interestingly, a PACER search reveals that Plaintiff only filed a few cases in the Northern District in late 2023 and after receiving several unfavorable rulings, switched venues to the Southern District a few months later which explains the massive influx in Plaintiff's cases in our District. In short, Plaintiff was forum shopping for favorable default judgment rulings.

In *Zaidal Blue Sky*, Honorable Judge Harvey Schlesinger dismissed the pending litigation without prejudice because Plaintiff's counsel failed to appear at the final pre-trial due to "calendaring errors." *GS Holistic, LLC v. Zaidal Blue Sky Invs. Corp.*, M.D. Fl. No. 3:22-cv-1217-HES-SJH, 2024 U.S. Dist. LEXIS 192880 at 7. Judge Schlesinger highlighted Plaintiff's counsel's prior violations, stating that, "[t]hough many violations…are relatively minor, some have been

egregious enough to warrant serious sanctions." *Id*. at 3-4. At one point, multiple courts in the district dismissed six (6) cases simultaneously. *Id*. at 3, citing *GS Holistic, LLC v. Kinder Combs 7, LLC*, 3:22-cv1206-TJC-LLL (Doc. 20 at 3). Ultimately, Plaintiff's prior counsel was referred to two (2) separate local bar associations and yet still failed to follow court orders. *Id*. at 5. "[C]ounsel's error is inexcusable considering the Ticktin Firm's long history of violating court order, the Local Rules of this district, and the Federal Rules of Civil Procedure." *GS Holistic, LLC v. Zaidal Blue Sky Invs. Corp.*, M.D. Fl. No. 3:22-cv-1217-HES-SJH, 2025 U.S. Dist. LEXIS 130586 at 6-7. Plaintiff appealed the dismissal as a sanction to the Eleventh District, which affirmed the District Court's Decision. *GS Holistic, LLC v. Zaidal Blue Sky Invs. Corp.*, 2026 U.S. App. LEXIS 1748 (11th Cir. 2026). Therefore, as of January 23, 2026, Plaintiff and Plaintiff's counsel were affirmatively on notice that a U.S. Circuit Court of Appeals upheld a District Court's sanctions ruling that considered Plaintiff's and Plaintiff's counsel entire litigation conduct when issuing an award of sanctions to defendants.

As previously discussed, PACER search shows that Plaintiff has filed approximately 1,001 cases since 2022. (See Def. Mtn. for Summ. Judg.). A LEXIS corporate litigation profile records a total of 988 federal cases (some may not yet be recorded by the system). (Exhibit 3 – GS Holistic, LEXIS Litigation Profile (Aug. 3, 2026)). Of those, Plaintiff has taken a mere ten (10) to trial to actually litigate the merits of its trademark infringement claims. (Id.). Since October of 2023, Plaintiff has filed ninety-one (91) cases in the Southern District of Ohio alone, according to a PACER search. That's approximately thirty (30) cases a year. According to the LEXIS Profile, litigation rapidly increased in 2021 through 2023, decreasing shortly after being sanctioned. While this might show a slight deterrent effect, in reality it simply shows that Plaintiff and Plaintiff's counsel are forum shopping between jurisdictions to determine which District Courts will likely

award them default judgment (Michigan District Courts have largely declined to do so based on the *Eitel* factors).

B. Plaintiff's and Plaintiff's counsel's conduct relevant to this particular case is sanctionable because they continued pursuing litigation against Defendants despite prior express warnings in other jurisdictions to cease the very same practices that occurred in the case at bar.

Throughout the course of this litigation, Plaintiff: (1) filed a Complaint requesting the highest statutory damage award despite the fact that it was operating at a net loss of profit for the prior fiscal year, and thus could not prove any damages at the outset raising substantial questions of whether standing to file suit existed in the first place; (2) filed a Motion for Default Judgment that included a highly suspect expert report, a summary of damage awards (some of which had been vacated or remanded), a Declaration of Folkerts that testified under Oath to Defendants' willful and intentional conduct without any substantive facts supporting the assertion, while simultaneously failing to verify that service of process had actually been perfected upon all Defendants; (3) represented to the Court on multiple occasions that defendants were either unrepresented by counsel, refused to participate in discovery, refused to schedule depositions, while defense counsel was conversing with Plaintiff's counsel the entire time trying to arrange a reasonable settlement; and (4) failed to abandon their claims at least to Wahdan in his individual capacity when they discovered during depositions that Wahdan did not possess the requisite intent, willfulness, or malice to hold him individually liable under the Lanham Act under existing precedent in multiple jurisdictions.

Most, if not all, of these actions resulted in additional delays and Defendants incurring substantially more attorney fees and expenses to defend themselves against claims of which Plaintiff should never have brought in good faith. In assessing all of these actions and inactions by Plaintiff and Plaintiff's counsel, both of them were clearly on notice from the plethora of prior

court jurisprudence across the country warning and sanctioning them in multiple jurisdictions. For these reasons, and in an attempt to actually deter both Plaintiff and Plaintiff's counsel from continuing to abuse the federal judicial system, Defendants now move the Court for reasonable attorney fees, expenses, and sanctions pursuant to 11 U.S.C. § 1117, 28 U.S.C. § 1927, the Honorable Court's inherent authority, and, in the alternative, if the Court agrees on the merits, it may issue a Show Cause Order under Civ. R. 11(c)(3) and impose Rule 11 sanctions sua sponte.

## III. LAW AND ARGUMENT

A. Defendants are entitled to attorney fees and sanctions against Plaintiff pursuant to 11 U.S.C. § 1117(a), because this case constitutes an "exceptional case" under the Lanham Act.

In 2015, the Sixth Circuit adopted the U.S. Supreme Court's analysis in *Octane* regarding whether a case is considered "exceptional" under the Lanham Act, as comparable to being exceptional under 35 U.S.C. § 285, the Patent Act. *Slep-Tone Entmt't Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 318 (6th Cir. 2015). All eleven U.S. Circuit Court of Appeals have followed suit and adopted Octane's "exceptional" analysis as applied to Lanham Act claims. See *Scholz v. Goudreau*, 901 F.3d 37 (1st Cir. 2018); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519 (2nd Cir. 2018); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 313-15, 61 V.I. 797 (3d Cir. 2014); *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 720-21 (4th Cir. 2015); *Baker v. DeShong*, 821 F.3d 620, 621-25 (5th Cir. 2016); *Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 317-18 (6th Cir. 2015); *LHO Chicago River, LLC v. Perillo*, 942 F.3d 384 (7th Cir. 2019); *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313 (8th Cir. 2018); *Sun Earth v. Sun Earth Solar Power*, 839 F.3d 1179, 1180-81 (9th Cir. 2016) (en banc); *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240 (10th Cir. 2021); *Tobinick v. Novella*, 884 F.3d 1110 (11th Cir. 2018). Therefore, along with its sister Circuit courts,

this Court should analyze whether this case constitutes an "exceptional" case under the Lanham Act pursuant to Octane.

The U.S. Supreme Court has stated that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both he governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Each case should be determined and evaluated on a "case-by-case basis" in the discretion of the District Court, "considering the totality of the circumstances." *Id*. "[S]anctionable conduct is not the appropriate benchmark…a district court may award fees in the rate case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." *Id*. at 555. The Supreme Court aptly concluded,

> "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award. Cf. *Noxell*, 771 F.2d, at 526 ("[W]e think it fair to assume that Congress did not intend rigidly to limit recovery of fees by a [Lanham Act] defendant to the rare case in which a court finds that the plaintiff 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons' . . . . **Something less than 'bad faith,' we believe, suffices to mark a case as 'exceptional'**)."

*Id*. (**Emphasis added**). Ultimately, the Supreme Court concluded that there is no specific evidentiary burden of proof upon a moving party to establish that a case rises to the level of "exceptional." *Id*. at 557-558.

Since the adoption of *Octane*, the Southern District of Ohio has yet to determine what factors it will consider in awarding fees to a prevailing *Defendant* in a Lanham Act case. However, as to analyzing an "exceptional" case where a trademark holder is the prevailing party, there is no "bright-line" rule. *Calloway Cleaning & Restoration, Inc. v. Burer*, S.D. Ohio No. 1:22-cv-12, 2024 U.S. Dist. LEXIS 67306, 2024 WL 1606575 at 33.

> "The plaintiff might have an unusually strong (or unusually weak) case on the merits. Blatant trademark infringement might justify an award for the plaintiff, whereas a frivolous infringement claim might justify one for the defendant. Or the losing party might have litigated the case in an unreasonable manner - for example, by **requesting costly discovery to coerce a settlement despite the weakness of its claims.**"

*Id*. at 32-33. (**Emphasis added**). In *Calloway*, the Southern District of Ohio ultimately declined to award attorney fees to a trademark owner but did so because it had already awarded sanctions throughout the course of litigation. *Id*. at 35-36. The Court reasoned it would be unjust to essentially sanction the infringer twice. *Id*. However, the Court did note that, "[t]he main factor that favors an award of fees is…'willfulness,' intent to deceive… [and/or] **'the public interest in making the misconduct unprofitable.'**" *Id*. at 36. (**Emphasis added**).

The Fourth Circuit has considered the following factors in evaluating the totality of the circumstances and whether a case is considered "exceptional": (1) whether there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; and (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence. *Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 483-484 (4th Cir. 2018). Ultimately, the Fourth Circuit held that, "a prevailing party need not establish bad faith or independently sanctionable conduct on the part of the non-prevailing party in order to be entitled to attorney fees under the Lanham Act." *Id*. at 489.

The Eastern District of Michigan has considered the following factors in awarding attorney fees under 15 U.S.C. § 1117(a), including: (1) frivolousness; (2) motivation; (3) objective unreasonableness (both in factual and legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence." *Ford Motor Co. v. Intermotive, Inc.*, E.D. Mich. No. 4:17-CV-11584-TGB-APP, 2025 U.S. Dist. LEXI 193313 at 20.

“No one factor is determinative, and an infringement suit could be '**exceptional**' for a prevailing **defendant** because of (1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well." *Id.*, (Citations omitted) (**Emphasis in the original**).

"**Awarding attorney's fees to a prevailing defendant is meant to 'provide protection against unfounded suits brought by trademark owners for *harassment* and the like.**" *Id*. at 20-21. (*Emphasis in the original*) (**Emphasis added**). “[T]he repeated advancement of defunct legal theories, along with the total failure to plead or sustain a bedrock element of the trademark claim, certainly sets [a case] apparat from the mine run of trademark cases involving at least minimally plausible causes of action.” *Id*. at 21-22, citing *Leapers, Inc. v. SMTS, LLC*, No. 14-12290, 2017 U.S. Dist. LEXIS 112864, 2017 WL 3084370, at 6 (E.D. Mich. July 20, 2017) ("In light of, among other things, the objective weakness of Leapers' position, the improper motive implied by the campaign of asymmetrical warfare of which this case is a single front, *and the need to deter such troubling uses of the judicial process in the future*, the court finds this case to have been **exceptional** within the meaning of the **Lanham Act**, 15 U.S.C. § 1117(a).") (**Emphasis in the original**) (*Emphasis added*).

The Eastern District of New York has stated that, “[t]he reasonableness of a plaintiff’s litigation position is only one factor in the analysis, “a court may award fees even though the losing party offered reasonable arguments," for example, to “deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable.” *RVC Floor Décor, LTD v. Floor*, E.D. NY No. CV 19-4894, 2021 U.S. Dist. LEXIS 156369 at 7. In analyzing whether a defendant is entitled to attorney fees pursuant to *Octane*, the Middle District of Florida looked to two (2) factors: (1) the strength of plaintiff’s

litigating position; and (2) the reasonableness (or unreasonableness) in the manner of litigation. *See generally Pro Video Instruments, LLC v. Thor Fiber, Inc.*, M.D. Fl. No. 6:18-cv-1823-Orl-31LRH, 2021 U.S. Dist. LEXIS 24968.

When assessing the strength of a plaintiff's position, the Court considered several factors. *Id*. at 5-12. Where an obvious flaw in an expert report renders it essentially useless, a plaintiff prosecuting a trademark infringement case should not reasonably expect to succeed on its trademark claims. *Id.* at 7-8. In addition, the Court considered if there is a lack of evidence in success on the merits at multiple stages of litigation. *Id*. at 10. ("Defendant correctly submits that the weakness of Plaintiff's litigating position was apparent from the outset as evidence by the lack of evidence presented at the preliminary injunction hearing and thereafter at the summary judgment stage."). Ultimately, the Court concluded that, "Plaintiff had a continuing obligation to assess the strength of its claims throughout the course of this litigation, but it never did. This failure, along with the dearth of evidence supporting Plaintiff's trademark claims, and its reliance on Dr. Seggev's bogus report, raises a reasonably strong inference that Plaintiff sued Defendant as a competitive weapon rather than to redress a lawful harm. For the foregoing reasons, attorney's fees are warranted." *Id*. at 12.

However, the Court did not stop its analysis there. While recognizing that it did not need to consider the reasonableness of the manner of litigation, the Court affirmatively stated that Plaintiff litigated in an unreasonable manner in two (2) ways: (1) through the use of a bogus expert report; and (2) causing the defendant to incur unnecessary expense by defending against its unreasonable attempt to resurrect a previously dropped claim because it submitted no evidence to support that claim. *Id*. at 13-14. "In sum, the patent weakness of Plaintiff's case, together with its

unreasonable litigation conduct, makes this an extraordinary case warranting the award of attorney fees under the Lanham Act."

It is axiomatic that before filing suit, any plaintiff must sustain damages caused by a defendant. The mere fact that Plaintiff was operating at a net loss and could not reasonably calculate distinct damages resulting from lost profits either in the State of Ohio (let alone the entire region), yet still brought suit against Defendants, should constitute an extraordinary case under the Lanham Act. As in *Calloway*, Plaintiff and Plaintiff's counsel sought costly depositions to Defendants (in both this case and its sister case) that lasted approximately a day and a half. During that time, Defendants had to shut down their already failing businesses to be present. As is the casse here, where a plaintiff never offered any proof of lost sales or damage to its economic value…nor showed that consumers were confused about their respective brands, the Lanham Act claim proved frivolous. *Reply All Corp. v. Gimlet Media*, E.D. N.Y., No. 15-CV-4950, 2021 U.S. Dist. LEXIS 69574 at 5. Accordingly, where an expert's assertion of damages were not "tethered to reality and all of which were intended to pressure Defendant into settlement…by inflating proposed damages," the litigation process was abused. *Id*. at 8-9. A case constitutes an "exceptional" case where a plaintiff files an objectively unreasonable lawsuit to extort a settlement, and past conduct of the plaintiff shows that a need for deterrence for similar recurring conduct is high. *Id*. at 9-10.

Plaintiff's corporate representative affirmatively asserting in Declarations made under penalty of perjury that Defendants' willfully and maliciously intended to infringe on Plaintiff's trademark, yet later stated he had absolutely no knowledge of their mindset whatsoever, and failed to review their depositions prior to his own. This is objectively unreasonable to continue pursuing the highest award of statutory damages (and maintain a position of which you cannot reasonably

infer) once evidence to the contrary is directly presented, as discussed by the Fourth Circuit in *Verisign*.

As in *Pro Video*, Plaintiff and Plaintiff's counsel submitted an expert report justifying the highest statutory damages award based on a standardized, expert report filed identically in both this case and its sister case. Plaintiff and Plaintiff's counsel, through that expert report, directly represented to the Court that Defendants' financial information was unobtainable and unverifiable, which permitted Plaintiff's expert to "impute" income to Defendants. **Plaintiff's counsel never requested Defendants' financial information throughout the entire course of discovery and therefore, this statement was a direct misrepresentation to the Court.** Further, Plaintiff had a continuing obligation to assess the merits of its case throughout the course of litigation.

Upon deposition of Defendants, once Plaintiff uncovered that Wahdan did not willfully, maliciously, and/or intentionally infringe its trademark, Plaintiff and Plaintiff's counsel should have dismissed its claim against Wahdan in his individual capacity. Further, at the time they became aware of this information there had already been multiple court rulings that a plaintiff prosecuting a claim of trademark infringement against a corporate officer had to prove willfullness, maliciousness, and/or intent. Despite this knowledge, Plaintiff's counsel then attempted to "settle" the case prior to the deposition of its corporate representative for Thirty Thousand Dollars ($30,000.00) for both cases. Defendants declined. This shows the true motivation of Plaintiff and Plaintiff's counsel behind its litigation tactics – litigate until settlement.

Finally, when viewing Plaintiff's and Plaintiff's counsel's litigation tactics as a whole, across the entire nation, after being sanctioned and warned in Court Orders in a multitude of jurisdictions, this case rises to the level of exceptional because, as in Ford Motors, there is a need to deter such conduct and use of the judicial process in the future. Clearly, neither Plaintiff nor

Plaintiff's counsel have heeded the Court Orders and warnings of several U.S. District Courts. For the foregoing reasons, Defendants respectfully request that this Honorable Court award it attorney fees as against both Plaintiff and Plaintiff's counsel, jointly and severally, under 11 U.S.C. § 1117(a).

B. Defendants are entitled to attorney fees and sanctions against Plaintiff's counsel pursuant to 28 U.S.C. § 1927, because Plaintiff's counsel should have dismissed its claims after various key events during the course of the litigation.

"In interpreting § 1927, the Sixth Circuit has not required the proof of bad faith." *Ullman v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 123 F.R.D. 559, 560 (S.D. Oh. 1987).

> "28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for "unreasonable and vexatious" multiplication of litigation despite the absence of any conscious impropriety. An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits, **or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious."** Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney."

*Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) (**Emphasis added**). "An attorney becomes sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Bailey v. Papa John's USA, Inc.*, 236 Fed Appx. 200, 204 (6th Cir. 2007), citing *United States v. Wallace,* 296 U.S. App. D.C. 93, 964 F.2d 1214, 1220 (D.C. Cir. 1992) (observing that recklessness is a lower standard than bad faith, requiring "deliberate action in the face of a known risk, the likelihood or impact of which the actor [inexcusably] underestimates or ignores."). "When one count of a multi-count complaint turns out to be baseless after discovery, as here, that claim should be withdrawn. However, a claim is not groundless simply because it was ultimately unsuccessful." *Id.* at 204-205. Counsel is not

sanctioned merely "because a plaintiff's claim was ultimately meritless, but **because plaintiff excessively lengthened the discovery process and then failed to dismiss the action after becoming aware of the inability to support any competent evidence to support the claim.**" *Id.* at 205. (**Emphasis added**).

> In order to award fees under § 1927, the Court must find "(1) that the claims advanced were meritless; (2) that counsel knew or should have known this; and (3) that the motive for filing the suit was for an improper purpose." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir.2011). **"Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts"** are all actions that the Sixth Circuit considers improper for the purposes of § 1927. *BDT Products, Inc. v. Lexmark Intern., Inc.*, 602 F.3d 742, 754 (6th Cir. 2011). A meritless claim alone, however, will not suffice. *Id.*

*Miller v. Experian Info. Solution, Inc.,* S.D. Oh. No. 3:13-cv-00090, 2016 U.S. Dist. LEXIS 129694 at 25-26.

Of important note, Plaintiff has already been sanctioned via § 1927 in *Brother Pastor*. In *GS Holistic, LLC v. Smoke N Save, LLC*, Honorable Magistrate Judge Merz expressly reserved the defendant's right to bring sanctions against Plaintiff under 28 U.S.C. § 1927 or Civ. R. 11 if warranted. *GS Holistic, LLC v. Smoke N Save, LLC*, S.D. Oh. No. 1:24-cv-00451, 2025 U.S. Dist. LEXIS 5226 at 3. Ultimately, however, the case was defaulted after Plaintiff filed an Amended Complaint and Defendant failed to answer. *See generally, id.* However, it is important to note that, at least as of 2024, the Southern District of Ohio already recognized that Plaintiff's and Plaintiff's counsel's conduct could be sanctionable and reserved a defendant's right to assert them as against Plaintiff's counsel.

If one thing makes it clear that Plaintiff sought to harass Defendants, it is the Settlement Agreement attached to Plaintiff's Motion to Enforce Settlement Agreement out of the Northern District of Texas in *GS Holistic, LLC v. Cloud Dreams*, N.D. Tex. No. 4:23-cv-00408-O, 2025 U.S.

Dist. LEXIS 227784. (Exhibit 4 – Cloud Dreams, Doc. No. 60-1 (Sep. 23, 2025)). In that case, Plaintiff and Defendants settled the case whereby Defendants would pay Plaintiff $5,000.00 **as well as enter into an Authorized Dealer Agreement for "purchases of $1,800.00 per month."** (Id.). This is quite simply egregious behavior that the Court has a vested interest in deterring. Now it is clear what "amazing offer" Attorney Penalta offered to Defendants in her demand letters to settle with Plaintiff. In short, become contractually obligated to pay us $1,800.00 a month for permission to sell our product in your store.

As previously discussed, Plaintiff's counsel knew through long-standing precedent that an individual officer of a corporate entity could not be liable under the Lanham Act in an individual capacity, absent willfulness, maliciousness, and/or intent. Upon the filing of its Complaint, Plaintiff and subsequent Motion for Default Judgment, Plaintiff had no reasonable basis or substantive facts to infer the Wahdan possessed intent, willfulness, and/or maliciousness. And while federal pleading standards permit pleading upon information and belief, Plaintiff and Plaintiff's counsel continued to pursue the maximum statutory damages against Defendants requiring a showing of intent, even after Defendants' depositions proved that they had no knowledge of the Studenglass brand, did not speak English as a first language, and reasonably believed that the waterpipes were authentic. (All of these statements as contained in Wahdan's Declaration were affirmatively asserted in depositions). Nevertheless, Plaintiff and Plaintiff's counsel failed to withdraw a claim they knew they could not reasonably (or ethically) support in good faith. For the foregoing reasons, Defendants respectfully request that this this Honorable Court award it attorney fees and litigation expenses against Plaintiff's counsel, jointly and under 28 U.S.C. § 1927.

C. The Court should exercise its inherent authority to award Defendants sanctions and attorneys fees or, in the alternative, utilize its powers under Civ. R. 11(c)(3) sua sponte.

To sanction a party through the use of inherent authority, the Sixth Circuit requires a finding of bad faith. *Magnesium Mach., LLC v. Terves*, *LLC*, 2021 U.S. App. LEXIS 36065 at 14 (6th Cir.). "'[B]ad faith' requires "(1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing suit was for an improper purpose such as harassment." *Id*., citing *United States v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013). A party may be sanctioned where it improperly uses the judiciary "to try to force a result that it could not obtain under the applicable law, which is separate and distinct from the issue of whether the sanctioned party was attempting to prevail on the merits of its lawsuit and collect payment on a meritless claim." *BDT Prods. v. Lexmark Int'l., Inc.*, 602 F.3d 742, 753 (6th Cir. 2010). Claims are meritless "when a plaintiff cannot, even through the amendment of his pleadings, truthfully establish **the existence of any injury.**" *Id*. at 755. (**Emphasis added**). Where a plaintiff is never injured and brings suit nonetheless, the suit is meritless. *Id*. Pursuing and advancing litigation in order to harass a party to obtain a settlement due to the ongoing cost of litigation is considered conduct that amounts to bad faith. *Id*. at 756.

That this Honorable Court ultimately held that "Plaintiff's operational loss and failure to delineate the portion of earnings attributable to the Studenglass mark means that even an award of any damages, even nominal statutory damages, is inappropriate." (Doc. 68 at 5 (Jul. 22, 2026)). If Plaintiff suffered no injury in fact, Plaintiff had no standing to bring suit and Plaintiff's counsel should have known that prior to the filing of the Complaint.

> "Our cases have established that the 'irreducible constitutional minimum' of standing consists of three elements. *Lujan*, 504 U. S*.*, at 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351. **The plaintiff must have (1) suffered an injury in fact**, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.,* at 560-561, 112 S. Ct. 2130, 119

> L. Ed. 2d 351; *Friends of the Earth, Inc.*, 528 U. S., at 180-181, 120 S. Ct. 693, 145 L. Ed. 2d 610."

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). (**Emphasis added**). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 338-339, citing *Lujan*, 504 U. S., at 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351.

However, "[a] 'concrete' injury must be 'de facto;' that is, it must actually exist." *Id*. at 340. It is not "necessarily synonymous with tangible. *Id*.

> "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."

*Id*. at 341. "Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only "the rights of individuals," *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 423, citing *Marbury* v. *Madison*, 5 U.S. 137, 1 Cranch 137, 170, 2 L. Ed. 60 (1803). "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. at 426. (*Emphasis in original*).

Neither Plaintiff nor Plaintiff's counsel should ever have invoked the Court's jurisdiction by filing the Complaint in either this case or its sister case. Plaintiff's claims are not, and were not at any relevant time, justiciable because Plaintiff did not suffer an injury in fact through which it obtained standing under Article III. Plaintiff's counsel should have known, upon the filing of the Complaint, that even a brief modicum of legal research would have revealed that the Southern

District of Ohio does not award even nominal damages in a trademark infringement case where the owner of a trademark is operating at a loss and/or cannot calculate actual damages derived from the alleged infringement. *See generally, Amerestate, Inc. v. Pace Mortg. Corp.*, S.D. Oh. No. C-3-89-281, 1992 U.S. Dist. LEXIS 22742; *Mister Twister, Inc. v. Jenem Corp.*, 710 F. Supp. 202 (S.D. Ohio 1989)). Of note, the Court awarded *Amerestate* its costs and fees in relation to that litigation after the Court held equity weighed in favor of doing so. *Amerestate* at 24. For the foregoing reasons, Defendants respectfully request that the Court exercise its inherent authority and award it sanctions, attorney fees, and litigation costs against both Plaintiff and Plaintiff's counsel, jointly and severally.

## IV. CONCLUSION

This Honorable Court should consider the national pattern and practice of both Plaintiff and Plaintiff's counsel as a whole, including, but not limited to: (1) warnings of sanctions via Court Orders; (2) disobeying said Orders; (3) failing to follow Local Rules and Civil Rules; (4) actually being sanctioned; (5) bringing claims by and through which an actual amount of damages cannot readily be ascertained; (6) forcing defendants with substantially less bargaining power in settlements for $1,800/month by agreeing to sign an Authorized Retail Agreement; and (7) misrepresenting the status of cases to the Court; and (8) failing to withdraw claims upon being presented with facts disproving said claims. Neither Plaintiff nor Plaintiff's counsel were ever actually deterred from continuing to bring meritless lawsuits and comport themselves with the standards of the federal judiciary. As such, Defendants respectfully request that this Court utilize either 15 U.S.C. § 1117, 28 U.S.C. § 1927, and/or its inherent authority to assess meaningful and necessary sanctions, attorney fees, and litigation costs to deter similar future conduct as against both Plaintiff and Plaintiff's counsel, jointly and severally.

Respectfully submitted,

FREDRIC L. YOUNG (0059544)
CARIN E. BIGLEY (0090231)
GREEN & GREEN, Lawyers
800 Performance Place
109 North Main Street
Dayton, Ohio 45402
Phone: (937) 224-3333
Fax: (937) 224-4311
E-mail: flyoung@green-law.com
cebigley@green-law.com
*Attorneys for Defendants,*
*PQR Enterprise, Inc. and Mahmoud Wahdan*

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been filed electronically through the Court's electronic filing system on the date stamped above. Notice was sent to all parties by operation of the Court's electronic system. Parties may access this filing through said system.

FREDRIC L. YOUNG (0059544)
CARIN E. BIGLEY (0090231)