**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**SOUTHERN DIVISION AT DAYTON**

Case No. 3:23-cv-00317

GS Holistic, LLC,

Plaintiff,

vs.

PRQ Enterprise Inc., et al.,

Defendants.

_______________________________________ /

**PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT**

Plaintiff GS Holistic, LLC, by and through undersigned counsel, respectfully moves the Court pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the judgment (Doc. #69) arising from the Court's Order Sustaining Defendants' Motion for Summary Judgment (Doc. #66). Alternatively, Plaintiff seeks relief under Rule 60(b)(1) based on excusable neglect. In support thereof, Plaintiff submits the Declaration of Eddy V. Leal, the deposition transcript of Mahmoud Wahdan as corporate representative of PQR Enterprise Inc., and further states as follows:

**Introduction**

Relief from the judgment entered by the Court is warranted for two independent reasons. First, Plaintiff's failure to file its response in opposition to Defendants' motion for summary judgment by the July 15, 2026 deadline resulted from an isolated calendaring mistake, not abandonment of this litigation. Counsel inadvertently calendared the ordinary 21-day response period provided by Local Rule 7.2(a)(2), rather than the shortened response deadline contained in the scheduling order. Counsel was preparing Plaintiff's opposition when, on July 21, 2026, counsel received the Court's order granting summary judgment in the related M&W Sons action. Upon

reviewing that order, counsel realized the calendaring error and that the same error affected this action. Counsel began addressing the missed deadline and preparing the appropriate filing, but before that filing was completed, the Court entered its order granting summary judgment in this action on July 22, 2026. Plaintiff had no intention whatsoever of abandoning its claims. Indeed, only weeks earlier Plaintiff had actively conducted discovery, taken depositions, and participated in multiple conferences with the Court, conduct the Court itself recounted in its order.

Second, and independently, the judgment rests on manifest errors of law. Defendants' failure to draw an opposition did not relieve them of their burden under Rule 56 to demonstrate that they were entitled to judgment as a matter of law. Yet Defendants' motion advanced several incorrect legal propositions: that a corporate officer cannot be individually liable under the Lanham Act absent willful infringement; that the absence of actual damages defeats or limits statutory damages for counterfeiting; and that no Lanham Act claim exists where the only completed sales were to Plaintiff's investigator. Each proposition is contrary to the governing law. The Court then relied on those propositions in concluding that the absence of willful conduct made individual liability inappropriate and that Plaintiff's operational loss foreclosed even statutory damages. Doc # 72 at 4–5. In short, Defendants led the Court to error.

Rule 59(e) exists precisely to correct such clear errors before they become embedded in a final judgment. The Court should vacate the judgment and its order sustaining Defendants' motion for summary judgment and deny summary judgment to Defendants. The case should proceed to trial.

## **Relevant Background**

This trademark counterfeiting case involves the sale of counterfeit Stündenglass gravity infusers by Defendants PQR Enterprise, Inc. and Mahmoud Wahdan. Plaintiff filed its Complaint

on October 19, 2023, alleging that Defendants sold the counterfeit goods in violation of 15 U.S.C. § 1114(1)(a).

Defendants filed their Motion for Summary Judgment on July 1, 2026. Doc. #66. Among other things, Defendants argued that Defendant Mahmoud Wahdan could not be individually liable because "a corporate officer cannot be found liable for a violation of the Lanham Act absent a showing of willfulness or other special circumstances." Doc. #66 at 12. Defendants further argued that, even if liability existed, Plaintiff could recover no more than the statutory minimum because its actual damages allegedly were minimal. Doc. #66 at 15. Finally, Defendants argued that Plaintiff's claims should be dismissed as to the corporate defendant because no actual damage occurred where the allegedly infringing products were sold only to Plaintiff's investigator. Doc. # 66 at 22.

The Court's scheduling order established July 15, 2026 as the deadline for Plaintiff's memorandum contra summary judgment, shorter than the ordinary 21-day response period under Local Rule 7.2(a)(2). Doc. #46 at 3; Doc. #68 at 3. Plaintiff's counsel inadvertently calendared the ordinary 21-day deadline. This was a calendaring mistake. On July 21, 2026, the Court's order in the related M&W action alerted counsel to the calendaring error and that the same error affected this action. Counsel began addressing the missed deadline and preparing the appropriate filing, but before that filing was completed, the Court entered its order granting summary judgment in this action on July 22, 2026

The procedural history itself demonstrates that Plaintiff had not abandoned this case. Plaintiff participated in discovery through June, including depositions, and participated in conferences with the Court regarding discovery shortly before the dispositive-motion deadline. Indeed, in explaining why enforcement of the July 15 deadline was appropriate, the Court noted

Plaintiff's counsel's participation in a June 11 conference concerning the discovery cutoff. Doc. #68 at 3.

The Court nevertheless concluded that Plaintiff had "abandoned all claims against Defendants and forfeited any arguments as to why judgment in favor of Defendants and against Plaintiff is not appropriate" because Plaintiff failed to respond to the Motion. Doc. #68 at 4. The Court further concluded that the "undisputed evidence" demonstrated that Mahmoud Wahdan had not acted intentionally, willfully, or recklessly and therefore could not be individually liable, and that Plaintiff's operational loss and inability to apportion earnings attributable to the Stündenglass mark rendered "even an award of any damages, even nominal statutory damages," inappropriate. *Id.* at 5.

Those conclusions warrant reconsideration.

## Legal Standards

### Rule 59(e)

Rule 59(e) permits a party to request "reconsideration of matters properly encompassed in a decision on the merits." *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451 (1982). This type of motion "calls into question the correctness of a judgment on some material point of fact or law, and may properly be cast in the form of a motion to reconsider, to vacate, to set aside, for reargument, or for rehearing." *Brown v. Local 58, IBEW*, 76 F.3d 762, 768 (6th Cir. 1996). A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

This motion invokes the first and fourth grounds. The judgment rests upon legal conclusions that are inconsistent with governing Sixth Circuit law and the text of the Lanham Act.

Correcting those errors now will also prevent the manifest injustice of terminating Plaintiff's claims without a merits determination under the correct legal standards.

**Rule 60(b)(1)**

Rule 60(b)(1) provides that a party may seek relief from a district court's final judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Sixth Circuit recognizes that "neglect" encompasses failures caused by mistake, inadvertence, or carelessness, and the equitable inquiry considers, among other things, prejudice to the opposing party, the length of the delay and its effect on the proceedings, the reason for the delay, and whether the movant acted in good faith. See *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385–86 (6th Cir. 2001) (citing *Pioneer Investment Services Co. v. Brunswick Assocs.*, 507 U.S. 380, 388, 395 (1993)).

Here, those considerations favor relief. The missed deadline arose from an isolated calendaring error concerning the shortened briefing period. Plaintiff had been actively litigating the case; the delay was brief; there is no cognizable prejudice from allowing Plaintiff's opposition to be heard; Plaintiff acted in good faith; and, as demonstrated below, Plaintiff has substantial meritorious arguments showing that Defendants were not entitled to summary judgment.

## Argument

**I. Plaintiff's isolated calendaring error constitutes excusable neglect and does not establish abandonment of its claims.**

Plaintiff does not dispute that the scheduling order established July 15 as the deadline for opposing memorandums to any summary judgment motion that may have been filed. The issue is whether counsel's inadvertent calendaring of the ordinary 21-day response period warrants the ultimate sanction that followed: final judgment disposing of the entire action.

Respectfully, it does not.

As reflected in the Declaration of Eddy V. Leal, counsel calendared the response based upon the ordinary period supplied by Local Rule 7.2(a)(2). On July 21, 2026, the Court's order in the related M&W action brought the calendaring error to counsel's attention and revealed that the same error affected this action. Counsel then began addressing the missed deadline and preparing the appropriate filing. Before that filing was completed, however, the Court entered its Order in this action on July 22, 2026. Plaintiff did not make a strategic decision to forego opposition. Nor was there any prolonged period of inactivity from which abandonment reasonably could be inferred.

To the contrary, the record affirmatively demonstrates continued prosecution of the case. Plaintiff participated in discovery and depositions in June 2026 and participated in conferences with the Court concerning discovery. The Court's final order itself observes that Plaintiff's counsel participated in a June 11, 2026 conference seeking relief concerning the discovery cutoff. A party actively conducting depositions and appearing before the Court mere weeks before dispositive motions are due is not manifesting an intention to abandon its claims.

The error was counsel's calendaring mistake. The consequences should be assessed under Rule 60(b)(1)'s equitable excusable neglect standard, not converted into a conclusive inference that Plaintiff intentionally relinquished its entire action. There is no meaningful prejudice to Defendants from restoring the case to the posture it occupied before the order, particularly because the Court can resolve the motion under the correct substantive law set forth herein.

Most importantly, Plaintiff has a meritorious basis for opposing summary judgment. As explained below, several of Defendants' dispositive legal premises are incorrect. This is therefore not a case in which relief from the missed deadline would merely postpone an inevitable judgment. It would allow the Court to decide the case under the governing law.

## II. Plaintiff's failure to file a response did not relieve Defendants of their Rule 56 burden or permit judgment based on erroneous legal premises.

The Sixth Circuit has squarely held that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991). Rather, "[a]t the very least, the court must examine the movant's motion for summary judgment to ensure that he has discharged" his initial Rule 56 burden. *Wilson v. City of Zanesville*, 954 F.2d 349, 351 (6th Cir. 1992). "[T]he failure to respond *at all* at summary judgment is not necessarily fatal to a plaintiff's claims." *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 534 (6th Cir. 2018). Because a movant must always make an initial showing, "the non-movant can still argue on appeal that the movant failed to meet his burden in the first instance." *Hanson*, 736 F. App'x at 535.

Thus, while a nonmovant's failure to respond to a motion for summary judgment may permit properly supported facts to be treated as uncontroverted, *see* Fed. R. Civ. P. 56(e)(2), it does not transform incorrect propositions of law into correct ones, eliminate the moving party's initial burden, or authorize judgment where the movant's own evidence fails to establish entitlement to judgment as a matter of law.

That distinction is decisive here. Defendants did not merely present facts to which Plaintiff failed to respond. They sought judgment based upon incorrect legal standards concerning individual Lanham Act liability, statutory damages, and the significance of sales to an investigator. The Order then relied on those premises in entering final judgment. The absence of a memorandum contra the motion for summary judgment could not cure those substantive defects.

## III. Defendants applied the wrong legal standard for individual liability under the Lanham act, and their own evidence shows Mahmoud Wahdan personally participated in the conduct at issue.

Defendants' first substantive argument concerning the individual defendant was expressly

framed as follows:

> Plaintiff GS Holistic's claims as to Defendant Mahmoud Wahdan should be dismissed with prejudice because a corporate officer cannot be found liable for a violation of the Lanham Act absent a showing of willfulness or other special circumstances.

Doc. #66 at 12.

Defendants then relied principally on an Eastern District of Wisconsin decision and the Seventh Circuit's 1926 decision in *Dangler v. Imperial Machine Co.*, 11 F.2d 945 (7th Cir. 1926). *Id.* That is not the governing formulation applied by courts within the Sixth Circuit.

The rule applied in this Circuit is that a corporate officer may be personally liable for infringement without piercing the corporate veil when the officer "personally take[s] part in the infringing activity or direct others to do so." *GS Holistic, LLC v. Express Smoketown, Inc.*, No. 3:23-cv-02040-JGC, 2024 U.S. Dist. LEXIS 114009, at *6 (N.D. Ohio June 28, 2024) (quoting *Top Tobacco, L.P. v. Abdelshahed*, 439 F. Supp. 3d 992, 1006 (M.D. Tenn. 2020)); *Roof Maxx Techs., LLC v. Tabbert*, No. 2:20-cv-03156, 2021 U.S. Dist. LEXIS 153486, at *33 (S.D. Ohio Aug. 16, 2021) (same formulation). In other words, "with respect to trademark infringement claims, an officer may be individually liable for infringement if he takes part in the infringing activity or directs others to do so, regardless of whether he was acting in his official capacity at the time." *MRI Software, LLC v. Lynx Sys.*, No. 1:12CV1082, 2016 U.S. Dist. LEXIS 11575, at *24 (N.D. Ohio Feb. 1, 2016).

The willfulness inquiry, pressed by Defendants, may affect remedies, including enhanced statutory damages, but it is not a freestanding prerequisite to individual liability where the officer personally participates in the infringing conduct.

Here, Defendants' own evidence establishes Mahmoud Wahdan's personal participation. Mr. Wahdan declared under penalty of perjury: "On October 12, 2022, I purchased two (2)

additional waterpipes from MOJO that are the subject of this litigation" Doc. #66-14 at ¶ 7. Moreover, he testified at his June 12, 2026 deposition that he personally made the purchasing decisions for PQR Enterprise. *See* Mahmoud Wahdan Dep. at 11:17–19. And he admitted personally purchasing the accused products:

**Q.** You don't dispute that you bought the merchandise from Mohammad?

**A.** I did buy it from him. This is an invoice from him.

*See* Mahmoud Wahdan Dep. at 40:5–8. He then confirmed that the product he purchased from Mohammad was placed for sale at his store. *Id.* at 40:14–17. He further stated that he personally made the purchase while "acting in [his] capacity as a business owner and/or agent." Doc. #66-14 at ¶ 7.

The upshot is that even accepting Defendants' factual submission as uncontroverted for purposes of the motion for summary judgment, the evidence does not establish entitlement to judgment under the correct standard. It does the opposite: it establishes that Mahmoud Wahdan personally participated in acquiring the very goods whose offering and sale form the basis of the infringement claims.

The court's order sustaining summary judgment nevertheless concluded that because Mahmoud and Moneer "did not engage in any intentional, willful, or even reckless infringement," individual liability was inappropriate. Doc. #68 at 5. That conclusion incorporates the same erroneous premise advanced by Defendants—that absence of willfulness precludes officer liability. As made clear by the caselaw cited above, it does not. Accordingly, the Court's adoption of Defendants' incorrect legal standard constitutes a clear error of law warranting relief under Rule 59(e).

At minimum, Defendants failed to demonstrate the absence of a genuine dispute

concerning personal participation under the proper legal standard. Summary judgment for the individual defendants therefore cannot stand.

### IV. The absence of actual damages does not extinguish Plaintiff's counterfeiting claims or eliminate its right to seek statutory damages under § 1117(c).

Defendants' second fundamental error concerns remedies. Their motion for summary judgment asserted that "[e]ven if the Court finds one or more Defendants liable, damages should be limited to the minimum statutory award of $1,000.00 under 15 U.S.C. § 1117(a)." Doc. #66 at 15. But counterfeiting statutory damages are governed by § 1117(c), not § 1117(a). And § 1117(c) expressly provides that, in a case involving the use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods, "the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, *instead of actual damages and profits* under subsection (a), an award of statutory damages." 15 U.S.C. § 1117(c) (emphasis added).

The statutory text therefore forecloses the premise that the absence of actual damages eliminates statutory damages. Statutory damages exist *instead of* proof of actual damages and profits. Courts in this district recognize this point. In *Coach, Inc. v. Cellular Planet*, the court explained that the Lanham Act authorizes statutory damages in lieu of actual damages and that such damages may be awarded regardless of proof of actual damages or the infringer's profits. *See Coach, Inc. v. Cellular Planet*, No. 2:09-cv-00241, 2010 U.S. Dist. LEXIS 62033, at *5 (S.D. Ohio June 22, 2010).

Plaintiff expressly demanded statutory damages under § 1117(c) in its Complaint. *See* Doc. # 1 at ¶¶ 59, 68. Accordingly, whether Plaintiff suffered $295.35, $600, some other amount of actual loss, or could not quantify actual loss *at all* does not establish Defendants' entitlement to judgment. *Id.* (quoting *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 850 (11th Cir. 1990)) ("Generally, statutory damages are awarded when no actual damages are

proven, or actual damages and profits are difficult and impossible to calculate."). Nor does Plaintiff's company-wide operating performance in 2025 bear on the availability of statutory damages under § 1117(c).

The Court, adopting the theory advanced by Defendants in their moving papers, concluded that Plaintiff's "operational loss and failure to delineate the portion of earnings attributable to the Stundenglass mark means that even an award of any damages, even nominal statutory damages, is inappropriate." Doc. #68 at 5. But those considerations address proof of actual loss under § 1117(a). They do not extinguish the separate statutory damages election Congress expressly created in § 1117(c) for counterfeiting cases. Indeed, none of the authorities Defendants cited in support of their no-actual-damages theory involved a claim for statutory damages arising from trademark counterfeiting. The absence of actual damages therefore could not, as a matter of law, support summary judgment on Plaintiff's counterfeiting claim or foreclose its election of statutory damages under § 1117(c).

Defendants' own framing demonstrates why summary judgment was inappropriate. They asked the Court, "[e]ven if" liability existed, to select a particular statutory amount. Doc. #66 at 15. A dispute about the *amount of damages* does not establish that Defendants are entitled to judgment *on liability*. Nor may the statutory range be reduced to its floor as a matter of law merely because Plaintiff's actual damages may be very small. Counterfeiting claims are different because Congress expressly authorized statutory damages under 15 U.S.C. § 1117(c) in lieu of actual damages and profits. Defendants therefore could not use summary judgment as a vehicle to usurp the jury's role and prematurely cap that remedy. The amount of statutory damages under 15 U.S.C. § 1117(c) is a question reserved for the trier of fact, subject to the statutory range and the trier of fact's discretion.

Thus, the asserted absence of actual damages furnished no basis to dismiss Plaintiff's counterfeiting claims, and the judgment should be vacated for this reason alone.

## V. Defendants' contention that no liability exists because the completed sales were to Plaintiff's investigator is contrary to the express language of the Lanham act.

Defendants' final substantive summary judgment argument compounds the same error. It states: "Plaintiff GS Holistic's claims as to PQR Enterprise, Inc.'s should be dismissed with prejudice because no actual damage occurred where the allegedly infringing product was only sold to Plaintiff itself." Doc. #66 at 22. That legal premise is flat wrong.

Section 1114 imposes liability for unauthorized use of a reproduction or counterfeit of a registered mark "in connection with the sale, *offering for sale*, distribution, or advertising of any goods or services" where the use is likely to cause confusion. 15 U.S.C. § 1114(1)(a) (emphasis added). Congress therefore did not require proof that an ordinary member of the public—as opposed to a trademark holder's investigator—completed a purchase.

Section 1117(c) is equally explicit. Statutory damages are available for use of a counterfeit mark "in connection with the sale, *offering for sale*, or distribution of goods or services." 15 U.S.C. § 1117(c). Thus, under the Lanham Act, liability does not depend upon a completed sale to a third-party customer. The statutory text expressly reaches the offer for sale itself.

The Sixth Circuit has said so directly. It has held that there is no requirement that the infringing goods "must have been produced by the defendant. Indeed, all the statutes demand is that the defendant have "used" the goods "in commerce" (Sections 1114(1)(a) and 1125(a)), **and we can think of no clearer "use" of goods "in commerce" than offering them for sale.**" *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006) (emphasis added). "'Sellers bear strict liability for violations of the Lanham Act.'" *Id.* (quoting *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1152 n.6 (7th Cir. 1992)).

Here, Defendants' own evidence establishes that the accused products were acquired for PQR Enterprise's business, placed in the store, and remained on the shelves for more than a year until two were purchased by Plaintiff's investigator. *See* Mahmoud Wahdan Dep. 19:8–21; 20:7–13; 39:5–17; 59:5–24; 60:1–15. Wahdan himself described the waterpipes as having "sat on the shelves" for a year before the investigator purchased them. Doc. #66-14 at ¶ 9. That is direct evidence that the products were offered for sale, regardless of who ultimately completed the purchase. *See Lorillard Tobacco Co.*

Defendants therefore cannot defeat liability by arguing that the counterfeit products happened not to be purchased by a customer until the trademark owner's investigator bought them. Under the plain text of §§ 1114 and 1117(c) and binding Sixth Circuit caselaw, the Lanham Act expressly reaches the antecedent offer for sale.

Accordingly, the absence of a completed sale to an uninvolved third-party customer could not support summary judgment. Defendants' own evidence establishes conduct that falls squarely within the Lanham Act's prohibition, and the Court's contrary conclusion rests on a manifest error of law.

## VI. The Mahmoud Wahdan declaration lacked a proper translation foundation under Rule of Evidence 604, and the purported translator's declaration was filed after the summary judgment deadline.

There is an additional evidentiary problem with the record upon which Defendants sought summary judgment.

Mahmoud Wahdan's declaration states that he "do[es] not speak English fluently" and that his power of attorney, Mohammed Shoman, "translated this Declaration from Arabic to English for me." Doc. #66-14 at ¶ 5. Defendants relied heavily upon that declaration to establish Wahdan's purported lack of knowledge and intent.

Yet no declaration from Shoman accompanied the July 1 summary judgment filing

establishing the translation foundation. Instead, on July 2—after the dispositive motion deadline—Defendants filed a separate notice and declaration from Shoman. The notice itself acknowledges that Shoman's declaration was filed later and characterizes its purpose as authenticating whether Wahdan "knew and understood Wahdan's Declaration at the time of execution." Doc. #67 at 1.

The later declaration does not cure the problem as submitted.

Federal Rule of Evidence 604 provides in unqualified terms: "An interpreter must be qualified and must give an oath or affirmation to make a true translation." Fed. R. Evid. 604.

Shoman states that he is fluent in English and Arabic and considers himself "competent to translate." He then states that "[o]n June 26, 2026, I translated both of Wahdan's Declarations in support of summary judgment." But he does not swear or affirm that the English-language declaration filed with the Court is a true and accurate translation of Wahdan's statements. His generic declaration under penalty of perjury that the facts contained in his own declaration are true is not the oath or affirmation "to make a true translation" contemplated by Rule 604.

The chronology also raises unanswered foundational questions. Shoman states that he performed the translation on June 26, whereas the Wahdan declaration was filed on July 1. The record does not identify the Arabic source document Shoman translated, attach that source, explain who prepared the English text, or establish that the version ultimately signed and filed is the same text Shoman purportedly translated. Shoman's July 2 declaration likewise does not identify, authenticate, or certify the accuracy of a particular English translation.

Those deficiencies matter because Rule of Civil Procedure 56(c)(4) requires a declaration used to support summary judgment to set out facts that would be admissible in evidence and to show that the declarant is competent to testify to the matters stated. Where the witness admittedly relies upon translation to supply the English-language declaration presented to the Court, the

translation must have a competent evidentiary foundation.

At minimum, therefore, the translated Wahdan declaration should not have been treated as undisputed competent evidence sufficient to establish the absence of any genuine issue of material fact without first resolving the Rule 604 foundation. The problem is amplified because the foundational declaration itself was filed after the dispositive motion deadline.

Plaintiff does not contend that every defect in a translated declaration is necessarily incurable. The point is simply this: the evidence as submitted did not establish the required foundation for the translation on which Defendants relied to obtain final summary judgment. Defendants therefore did not carry their Rule 56 burden on that record.

## **Conclusion**

With respect, the Court's "Order Sustaining Motion for Summary Judgment" entered on July 22, 2026, and the corresponding judgment entered that same day must be vacated for the numerous fundamental errors.

The Court concluded that Plaintiff's nonresponse constituted abandonment, but Sixth Circuit precedent requires an independent determination that the moving party has satisfied Rule 56. Defendants did not do so.

Wahdan sought to avoid individual judgment under a willfulness standard that does not govern personal participation liability, notwithstanding their own evidence that the individual defendant personally was involved in the purchase of the accused products.

They treated actual damages as a prerequisite to or limitation upon statutory damages, notwithstanding § 1117(c)'s express authorization to elect statutory damages *instead of* actual damages and profits.

They sought dismissal because the completed sales were to Plaintiff's investigator, notwithstanding the Lanham Act's express application to an offering for sale.

And they relied upon a translated declaration whose translation foundation was supplied only after the summary judgment deadline and still did not contain the oath or affirmation required by Rule 604.

These are precisely the sorts of clear legal errors for which Rule 59(e) relief is appropriate. Plaintiff's calendaring mistake should not result in final judgment based upon legal propositions that would not withstand scrutiny under Rule 56. The appropriate course is to vacate the judgment, deny Defendants' summary judgment, restore the case to the docket, and allow this case to proceed to trial.

Respectfully submitted,

EDDY LEAL, P.A.
777 Brickell Avenue, Suite 500
Miami, FL 33131
Phone: 305-979-3900
Email: EL@leallegal.com
E-Service: eservice@leallegal.com

By: /s/ Eddy Leal
Eddy Leal, Esq.
Florida Bar No. 96030

*Attorney for the Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19, 2026, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF and it was sent electronically to all NEF registered parties.

By: /s/ Eddy Leal
Eddy Leal, Esq.
Florida Bar No. 96030