**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **GS HOLISTIC, LLC,** | : | **CASE NO. 3:23-cv-00317** |
| **Plaintiff,** | : | **District Judge Walter H. Rice** |
| **v.** | : | |
| **PQR ENTERPRISE, INC., et al.,** | : | |
| **Defendants.** | : | |

DEFENDANTS PQR ENTERPRISE, INC. AND MAHMOUD WAHDAN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT; MOTION FOR LEAVE TO FILE IN EXCESS *INSTANTER*

Defendants PQR Enterprise, Inc. ("PQR") and Defendant Mahmoud Wahdan ("Wahdan") (collectively "Defendants"), through counsel, hereby submit this Memorandum in Opposition to Plaintiff GS Holistic, LLC's ("Plaintiff") Motion for Relief from Judgment ("Motion for Relief"). In its Motion for Relief, Plaintiff moves pursuant to Civ. R. 56(E) and Civ. R. 60(B). As to Civ. R. 59(E), Plaintiff alleges that the Court rendered judgment based on a clear error of law or, alternatively, the judgment constitutes a "manifest injustice." The judgment rendered was neither based on a clear error of law, nor did it result in a "manifest injustice." To the contrary, Sixth Circuit precedent supports the proposition that individual directors and officers of a corporation cannot be held liable under the Lanham Act absent intent and/or willfulness or wantonness. A memorandum in support follows.

Respectfully submitted,

FREDRIC L. YOUNG (0059544)
CARIN E. BIGLEY (0090231)
GREEN & GREEN, Lawyers
800 Performance Place
109 North Main Street
Dayton, Ohio 45402
Phone: (937) 224-3333
Fax: (937) 224-4311
E-mail: flyoung@green-law.com
cebigley@green-law.com
*Attorneys for Defendants,*
*PQR Enterprises, Inc. and Mahmoud Wahdan*

MEMORANDUM

## I. INTRODUCTION

Plaintiff is not entitled to relief under Civ. R. 59(E) or Civ. R. 60(B). Both a clear error or law and/or a manifest injustice under Civ. R. 59(E) require unique circumstances, such as when injunctions become moot or new information becomes available warranting relief. A clear error of law requires more than just disappointment over a court's decision. Manifest injustice occurs where there is a direct and obvious error of either law or fact. None of those circumstances exist here.

In addition, Plaintiff has failed to establish excusable neglect and a meritorious claim or defense under Civ. R. 60(B). Plaintiff's counsel's failure to file a Memorandum in Opposition to Defendants' Motion for Summary Judgment by the deadline constitutes inexcusable neglect; it is irrelevant that Plaintiff's counsel was "in the process" of drafting a Motion for an Extension of Time to respond when the Court granted Defendants' Motion for Summary Judgment. Plaintiff's

counsel knew of the deadline for five (5) months and the Court directly reminded all parties' counsel of record at the last status conference.

Most importantly, however, Plaintiff failed to even plead a meritorious claim or defense to summary judgment, other than to claim the Court misapplied the law. This is simply incorrect though, because the Court applied the proper standard under the Lanham Act for liability. The Sixth Circuit had already adopted the standard that a director or officer acting as an agent for a corporate entity cannot be liable for infringement in *D'Arcy Spring Co. v. Marshall Ventilated Mattress Co.*, 259 F. 236, 242 (6th Cir. 1919). Coupled with the fact that Plaintiff's corporate representative testified that not only did Plaintiff operate at a loss in 2025, as CEO, he could not identify a single wholesaler in the State of Ohio that contracted to sell Plaintiff's products. Therefore, there was no measure of damages resulting in a lack of standing under Article III.

Plaintiff is precluded from claiming disgorgement of profits under 15 U.S.C. § 1117(a), because the only sales were to its own investigators. Where injunctive relief is available and requested, equity favors injunctive relief over monetary damages under the Lanham Act. Thus, at most Plaintiff could have been awarded an injunctive prohibiting the future sale of allegedly infringing waterpipes. However, PQR is essentially insolvent and Wahdan is no longer operating either of his smoke shops, as they went out of business and forced into early retirement in large part due to this litigation.

Finally, there is nothing defective about Shoman's Declaration that would have precluded the Court from considering Wahdan's Declaration in support of summary judgment. The fact that Wahdan's Declaration was translated a few days prior to execution is inconsequential. Specifically, it shows that Wahdan took the time to fully understand and comprehend what he was testifying to prior to execution. This is a meaningless technicality that Plaintiff now seeks to exploit or

capitalize on in order to get a favorable ruling on summary judgment simply because it is disappointed in the Court's Decision. For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Relief.

## II. LAW AND ARGUMENT

### A. Standard of Review

#### 1. Civ. R. 59(E)

Plaintiff claims that the Court should grant it relief from judgment pursuant to Civ. R. 59(E) on the basis that the Court based its decision on a "clear error of law" and/or the decision resulted in a "manifest injustice."

> "Generally, a manifest injustice or a clear error of law **requires unique circumstances**, such as injunctive relief scenarios or superseding factual scenarios. See, e.g., *Davis by Davis v. Jellico Comm. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir.1999) (no manifest injustice when trial court refused to reexamine the issue of damages in a jury verdict when plaintiff died after jury verdict was reached); *Collison v. International Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir.1994) (clear error of law because the district court failed to address a due process claim); *Hayes v. Douglas Dynamics*, 8 F.3d 88, 90 n.3 (1st. Cir.1993) (motion to reconsider presented no new information)."

*McWhorter v. Elsea*, No. 2:00-cv-473, 2006 U.S. Dist. LEXIS 87113 at 7 (S.D. Ohio) (**Emphasis added**). Reaching the threshold [for a clear error of law] requires more than just 'disappointment' from the losing party, but a wholesale disregard, misapplication, or failure to recognize controlling precedent' by the district court." *Bryson v. Specialized Loan Servicing, LLC*, No. 25-5846, 2026 U.S. App. LEXIS 16824 at 3-4 (6th Cir.).

While "cases in the Sixth Circuit do not offer clear guidance as to what qualifies as manifest injustice…the plain meaning of those words is instructive." *Drahos v. U.S. Bank, N.A.*, No. 2:25-cv-663, 2026 U.S. Dist. LEXIS 134949 at 3 (S.D. Ohio). Black's Law Dictionary defines "manifest injustice" as "a direct, obvious, and observable error in trial court." *Id*. The "plain meaning [of

manifest injustice] requires that it involve an obvious error and unjust result." *Martin v. Univ. of Tenn.*, No. 25-5845, 2026 U.S. App. LEXIS 9385 at 5 (6th Cir.).

There was no "clear error of law" or "manifest injustice" that occurred in this case. Simply put, Plaintiff's counsel improperly calendared a deadline that had been established since February 6, 2026 and which the Court reminded both counsel of record at the status conference on June 11, 2026. Further, as discussed in Defendants' Motion for Attorney Fees and Sanctions ("Motion for Fees"), both Plaintiff and Plaintiff's counsel have a long history of missing deadlines and failing to follow court orders. (Doc. 70). Many of these instances resulted in sanctions being imposed throughout multiple U.S. District Courts in jurisdictions across the country. (Id.). To now claim that the missed deadline was an "isolated incident" when Plaintiff's counsel has continuously delayed proceedings in this matter (as well as others throughout the country) is not only disingenuous but directly contradicts Plaintiff's counsel's routine pattern of well-established legal practice in the exorbitant number of cases currently pending nationwide.

2. <u>Civ. R. 60(B)</u>

Plaintiff claims it should be granted relief from judgment under Civ. R. 60(B)(1) due to "excusable neglect" because the deadline to respond to Defendant's Motion for Summary Judgment was not correctly calendared. (Doc. 71 at PAGEID 938). However, "[t]he failure to respond to a motion for summary judgment or to request an extension of time to file a response thereto is **inexcusable neglect**." *Kendall v. Hoover Co.*, 751 F.2d 171, 175 (6th Cir. 1984) (**Emphasis added**). Interestingly, Plaintiff's counsel categorizes the "calendaring error" as being "isolated." (Id.). However, as discussed in both Defendants' Motion for Summary Judgment and Defendants' Motion for Fees, these types of "calendaring errors" and missed deadlines are actually an established, standard practice, or *modus operandi*, for Plaintiff and Plaintiff's counsel not only

in this Court, but in multiple U.S. District Courts in various jurisdictions across the country. *See generally* (Doc. 66) (Doc. 70). In fact, these "isolated calendaring errors" are what resulted in multiple dismissals and sanctions from various Judges in a multitude of jurisdictions. (Doc. 70, PAGEID 895-899).

When granting Defendants' Motion for Summary Judgment, the Court specifically noted that both Plaintiff's counsel and defense counsel had been reminded by the Judge at the last conference call that the deadlines for summary judgment had been expedited and shortened and both counsel confirmed their understanding of this. (Doc. 68, PAGEID 886). To now claim that failure to respond constitutes excusable neglect for what is improperly characterized as an isolated incident, when in fact deadlines are routinely missed by Plaintiff's counsel throughout the country is, quite frankly, a disservice to both the Court and defense counsel. The Court and defense counsel are now wasting additional time, resources, and financial wherewithal to entertain what Plaintiff's counsel considers "excusable neglect" for a deadline that had been in place since February 6, 2026 when the Court issued the Scheduling Order. (Doc. 46).

To ascertain whether neglect is excusable, the Sixth Circuit applies "an equitable determination based upon the following factors: (1) the danger of prejudice to the other party; (2) the length of the delay; (3) its potential impact on judicial proceedings; (4) the reason for the delay; and (5) whether the movant acted in good faith." *Est. of Isham v. Richardson*, No. 3:24-cv142, 2025 U.S. Dist. LEXIS 226728 at 9 (S.D. Ohio). In its Motion for Relief, Plaintiff claims that Plaintiff's counsel "began preparing [a] response [to the Motion for Summary Judgment] and was preparing to seek a brief extension when the Court's order arrived." (Doc. 71, PAGEID 940). If this is true, then why did Plaintiff's counsel not immediately move the Court to vacate the judgment and/or actually file the request for an extension of time to respond that he was allegedly

preparing once he missed the deadline? Instead, Plaintiff's counsel waited twenty-eight (28) days to move for relief from judgment – the absolute last day available for him to do so under Civ. R. 59(E).

Defendants will be prejudiced by any further ongoing litigation in this matter. Defendants lost their businesses and their employment due to this litigation. Defendants are in significant debt due to attorney fees. And yet Defendants constantly tried to mitigate their damages early in this litigation process by offering reasonable settlements to Plaintiff's counsel (which were all declined). Plaintiff cannot prove damages, simply put. Therefore, even if the judgment was reversed, not only would Defendants incur more attorney fees, but Plaintiff would not even recover nominal damages because Plaintiff had no ability to even measure its actual damages since it operated at a loss last year. To re-open this litigation and cause more harm to Defendants would be inequitable and unjust. Plaintiff is used to "winning" in the form of default judgments. Plaintiff needs to accept that, once again like so many times before this, it missed a Court ordered deadline and lost a case. Assuming arguendo that this Court even awarded the $150,000.00+ damages sought by Plaintiff, Defendants are not collectible. The judgment would be worthless.

Plaintiff's counsel waited twenty-eight (28) days to move for relief from judgment. Plaintiff's counsel claims that he was in the process of requesting an extension to respond when the Court issued judgment. If that is in fact true, then Plaintiff's counsel very easily could have converted the Motion for Extension into a Motion for Relief within a few days of judgment being entered. Plaintiff's counsel failed to do so. The continued delays and excuses throughout the course of this litigation have unnecessarily prolonged the matter and caused Defendants to incur additional increased and unnecessary attorney fees and expenses. The delay was unwarranted and directly contradicts Plaintiff's counsel's claim that he was requesting an extension. In reality,

Plaintiff's counsel completely missed the deadline and then once defense counsel filed the Motion for Fees, Plaintiff's counsel decided to act. Otherwise, Plaintiff's counsel would have (and should have) requested relief immediately upon receipt of the judgment.

The impact on judicial proceedings has already been discussed above, as related to the continuous unwarranted delays from Plaintiff's counsel's inability to manage a high-volume, excessive docket of meritless claims against small business owners from whom Plaintiff cannot reasonably even expect to collect – to the tune of approximately $8.1 million over three (3) years from default judgments alone. See (Doc. 70-1). Plaintiff's counsel provides no reason for his delay in moving to vacate the judgment. It is difficult to believe that Plaintiff has acted in good faith in moving for relief, because if it had been done in good faith as claimed, it would have been done as soon as judgment was rendered. Instead, Plaintiff waited the full time until the final deadline, which is Plaintiff's standard litigation practice to instill continuous delays in this Court (along with many other District Courts in other jurisdictions).

Most importantly, the inquiry under Civ. R. 60(B) does not merely stop at excusable neglect, because the moving party must also establish a meritorious claim or defense. *Kozikowski v. Comm'r., IRS*, No. 07-2000, 2008 U.S. App. LEXIS 27940 (6th Cir.), citing *Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156, 1160 (6th Cir. 1980). Even if the Court were to determine Plaintiff's counsel's "neglect" was "excusable," Plaintiff still does not have a meritorious claim because it cannot prove any damages. As discussed in Defendants' Motion for Summary Judgment, Plaintiff operated at a net loss in 2025. (Doc. 66).

"[A] nominal damages award makes that party that is successful on the claim a prevailing party. *Yellow Book USA, Inc. v. Brandeberry*, No. 3:10-cv-025, 2013 U.S. Dist. LEXIS 745576 at 24 (S.D. Ohio May 28, 2013), citing *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 555 (6th Cir.

2008). "The award of nominal damages, however, highlights the party's failure to prove actual, compensable injury, and the only reasonable fee for the party receiving nominal damages is usually no fee at all." *Id*. Damages were not warranted where a company operated at a loss, despite projecting a profit for the current fiscal year, and the alleged offending company had not acted in bad faith. *Amerestate, Inc. v. Pace Mortg. Corp.*, No. C-3-89-281, 1992 U.S. Dist. LEXIS 22742 at 23 (S.D. Ohio Jun. 10, 1992). If a trademark owner cannot produce any evidence of actual damages, "the principles of equity weigh against an award of damages." *Id*. In this case, however, the Court determined that even nominal damages were inappropriate because Defendants "did not engage in any intentional, willful, or even reckless infringement of Plaintiff's trademark." (Doc. 68 PAGEID 888).

B. Plaintiff is precluded from raising issues that it should have raised in a response to summary judgment in a Motion for Relief; thus, the Court should not consider many of the substantive arguments raised by Plaintiff.

Importantly, "**Rule 59(E) is 'not a vehicle to present new arguments that could have been raised prior to the court's dispositive decision.'**" *Bryson v. Specialized Loan Servicing, LLC*, No. 25-5846, 2026 U.S. App. LEXIS 16824 at 6 (6th Cir.) (**Emphasis added**). By failing to respond to Defendants' Motion for Summary Judgment, Plaintiff has waived this argument unless and until the Court grants Plaintiff the relief it seeks. However, Defendants will address Plaintiff's claims regardless for the Court's consideration.

1. *Defendants met their burden of proof under Civ. R. 56; Plaintiff's failure to respond is irrelevant.*

Plaintiff claims that despite its failure to file a response to Defendants' Motion for Summary Judgment, the Court still should have denied the motion because the decision was based on "erroneous premises." (Doc. 71 PAGEID 944). In making this bold claim, Plaintiff cites to *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir. 1991). (Id.). Plaintiff further claims that

Defendants did not discharge their burden of proof under Civ. R. 56. (Id.). These arguments are based on three (3) faulty premises: (1) that the Court "erroneously" relied on improper precedent;[1] (2) that Defendants failed to meet their burden of proof; and (3) that the Court granted summary judgment on behalf of Defendants merely because it was unopposed.

Defendants met their burden of proof under Civ. R. 56 as supported by the Declaration of Mahmoud Wahdan, the Declaration of Mohammed Shoman, the Deposition of Christopher Folkerts, and properly authenticated receipts which supported the Declarations. Plaintiff submitted nothing until it filed its Motion for Relief (which cannot be used to raise new issues) and fails to identify any circumstance (other than the alleged translation issue)[2] through which Defendants allegedly did not meet the requisite burden to be awarded summary judgment. As such, Plaintiff's claim that Defendants did not meet their burden of proof rings hallow. All Plaintiff does is complain that it missed a required deadline that had been established for five (5) months and of which the Court directly reminded both counsel of record at the Scheduling Conference where it extended the discovery deadline. (Doc. 68, PAGEID 886).

Notwithstanding the foregoing, *Carver* is completely irrelevant to the issues raised by Plaintiff. In *Carver*, the District Court dismissed plaintiff's complaint on a procedural defect and in reliance on a Local Rule. *Carver* at 453. The Local Rule permitted a complaint to be dismissed if a Motion to Dismiss had not been responded to within the designated time period. *Id*. at 453-454. As such, the "sanction" of dismissal for failure to prosecute or respond by a designated deadline was inapposite to the spirit of the Civil Rules. *Id*. at 454. This was particularly true where the Magistrate found that some of Carver's claims could have survived the Motion to Dismiss. *See generally, id.*

[1] The Court did not rely on erroneous precedent, as discussed in Section (B)(2).
[2] The issue raised regarding the translation of Wahdan's Declaration is subsequently addressed in Section (B)(4) below.

While the Sixth Circuit did states that "failure to respond…standing alone, [did not] amount to a failure to prosecute," that is not why the Court granted Defendants' Motion for Summary Judgment. First, Plaintiff repeatedly had to correct legal filings submitted to the Court, delayed filing its Motion for Default Judgment under the Court issued a Show Cause Order, conducted no discovery until the midnight hour (and then obtained an extension to do so based on the misrepresentation that Defendants were not cooperating), and then, despite all these failings, missed the deadline to respond to summary judgment. It was not simply one (1) instance that led the Court to believe Plaintiff was not sufficiently prosecuting its case – there were multiple instances.

In addition, *Carver* only stands for the proposition that, even where a non-moving party fails to respond to a dispositive motion, that does not relieve the moving party from its burden of proof. Id. at 454-455. *Carver* dealt with an inmate that was allegedly denied federally p[rotected rights under 42 U.S.C. § 1983 – a stark contrast from a Plaintiff that owns a trademark and is routinely awarded default judgments, totaling over $8.1 million in the past three (3) years alone. The stakes in *Carver* were substantially different than the "trademark infringement" claims that a national corporation seeks to impose upon individual owners of small businesses, of which litigation typically results in the dissolution of the businesses as a whole.

In its Decision granting Defendants' Motion for Summary Judgment, the Court cited to *Humphrey v. United States AG Office*, 279 Fed. Appx. 328 (6th Cir. 2008) for the proposition that a Court may deem a plaintiff to have waived opposition to a motion upon a failure to respond thereto. (Doc. 68, PAGEID 887). *Humphrey* further states that any arguments not raised in a response to a dispositive motion are effectively waived. *Humphrey* at 331. Consequently, Plaintiff's argument related to the application of alternative precedent as well as any purported

issues with Defendants' Declarations are waived due to Plaintiff's failure to respond. As previously discussed, Plaintiff cannot use a Civ. R. 59(E) or Civ. R. 60(B) motion to argue issues that should have been raised in a response to a dispositive motion, such as the introduction of new evidence via Wahdan's Deposition. Likewise, Plaintiff cannot raise novel issues in his Motion for Relief to preserve them on appeal. *Heyward v. Cooper*, 88 F.4th 648, 655 (6th Cir. 2023), citing *Humphrey*, supra. ("[W]here the plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motion to dismiss, the arguments have been forfeited.").

Further, after stating that Plaintiff effectively abandoned its claims, the Court continued to thoroughly analyze the record before it to reach its determination on summary judgment. The Court referenced the "undisputable evidence" which showed that Wahdan and Moneer "did not engage in any intentional, willful, or even reckless infringement…" (Doc. 68, PAGEID 1003). As a result, liability against them as individuals was deemed inappropriate. (Id.). Further, the Court also considered the fact that Plaintiff had a significant operational loss and failed "to delineate a portion of earnings attributable to the Studenglass mark." (Id.). Based on that failure (i.e. the inability to provide any cognizable measure of actual damages), the Court concluded that even nominal statutory damages was inappropriate. (Id.). That conclusion aligns with prior precedent in the Southern District of Ohio under *AmerEstate, supra*. Thus, Plaintiff cannot reasonably claim that this Court did not file binding precedent. For the foregoing reasons, Defendants respectfully request that the Court uphold its decision in granting Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Relief.

2. *The Court applied the proper standard for individual liability under the Lanham Act.*

"District courts have a great deal of discretion in fashioning an appropriate remedy in cases of trademark infringement." *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine,*

*Inc.*, 75 F.4th 607, 611 (6th Cir. 2023). Plaintiff claims that an individual defendant's trademark infringement does not have to be intentional, willful, and/or wanton to be held liable under the Lanham Act. In support of this proposition, Plaintiff cites to *GS Holistic, LLC v. Express Smoketown, Inc.*, No. 3:23-cv-02040-JGC, 2024 U.S. Dist. LEXIS 114009 at 6 (N.D. Ohio Jun. 28, 2024), quoting *Top Tobacco, L.P. v. Abdelshahed*, 439 F. Supp. 3d 992, 1006 (M.D. Tenn. 2020); *Roof Maxx Techs, LLC v. Tabbert*, No. 2:20-cv-03156, 2021 U.S. Dist. LEXIS 153486 at 33 (S.D. Ohio Aug. 16, 2021). (Doc. 75, PAGEID 1060). Plaintiff further criticizes Defendants by relying on Seventh Circuit precedent in their proposition that individual officers and/or directors cannot be held liable under the Lanham Act absent intentional, willful, and/or wanton conduct that amounts to "special circumstances" under *Dangler*. Plaintiff argues that Defendants relied on persuasive authority, yet does the exact same thing itself. *Express Smoketown* and *Top Tobacco* are also persuasive authority and not binding to this Court. In *Express Smoketown*, Judge Carr stated:

> Finally, I am aware that GS has filed at least four other very similar complaints in this district, three of which GS voluntarily dismissed. And in his motion, Al-Manifi draws my attention to other very similar complaints from GS in courts across the country…One court dismissed GS's complaints in several cases after GS's counsel repeatedly failed to follow the local rules. *GS Holistic, LLC v. Kinder Combs 7 LLC*, No. 22-cv-1206, 2023 U.S. Dist. LEXIS 139045, 2023 WL 5104701, at *1 (M.D. Fla. Aug. 9, 2023). In another case, GS filed a motion to dismiss its claim voluntarily because "the correct cause of action . . . was not trademark infringement, but rather patent infringement." *GS Holistic, LLC v. Brother Pastor LLC*, No. 22-cv-2179, 2023 U.S. Dist. LEXIS 106436, 2023 WL 4082027, at *4 (M.D. Fla. June 20, 2023). The court in that case also sanctioned GS's counsel for suing "without any evidence of trademark infringement" and for failing to "change course after receiving further information that its factual contentions and legal claims were not viable." 2023 U.S. Dist. LEXIS 106436, [WL] at *5. **I trust that in this case, all parties will heed our Local Rules, efficiently prosecute any plausible claims they wish to bring, and appropriately abandon any claims that are or become implausible. I also warn all parties that a failure to do so may result in sanctions."**

*Express Smoketown* at 13 (**Emphasis added**). Despite this clear warning from the Northern District, Plaintiff did not efficiently prosecute claims, follow Local Rules and Court Orders, or

abandon claims once they became implausible. This is only one example of Plaintiff's well-established pattern of litigation misconduct in multiple jurisdictions across the country.

Plaintiff also cites to *Tabbert* as binding precedent out of the Southern District. However, in *Tabbert*, the Court found the individual defendants liable because "[they] were aware the Product's patent had lapsed but created marketing materials that advertised the Product as patented and exclusive." The individual corporate defendants in *Tabbert* acted with intent and/or willfulness. In reaching its conclusion, the Court relied on *Simmons v. Cook*, 701 F. Supp. 2d 965, 989-90 (S.D. Ohio 2010) and *Tri-State Hosp. Supply Corp. v. Medi-Pac*, No. 1:06cv824, 2008 U.S. Dist. LEXIS 137578, 2008 WL 11351556, at *6 n.8 (S.D. Ohio June 2, 2008). *Simmons* states that corporate officers may be personally liable for Lanham Act violations and cites to *State Farm Mut. Auto. Ins. Co. v. Sharon Woods*, No. 2007 U.S. Dist. LEXIS 86651 (S.D. Ohio Nov. 26, 2007). In that case, the Court stated that, "**[t]he intent of the defendant in a trademark case is relevant** because 'purposeful copying indicates that the alleged infringer…believes that his copying may divert some business from the senior user.'" *Id*. at 17. (**Emphasis added**).

*CCA Global* is out of the Western District of Kentucky and therefore, also not binding on this Court. In *CCA Global*, the Court determined that intent is irrelevant as to infringement. The Court cited to *Dangler*, stating that "[e]ven *Dangler* holds that when a corporate officer personally participates in the infringing acts, other than as an officer, he is subject to personal liability." *Id*. at. 7. This construction, however, is an incorrect interpretation of *Dangler*. The plain language of *Dangler* states,

> "**It is when the officer acts willfully and knowingly** – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability -- that officers are held jointly with the company."

*Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926) (**Emphasis added**). *Dangler* firmly established that an officer must act willfully and knowingly to be held liable under the Lanham Act.

*Dangler's* requirement of willfulness and intent has been expressly adopted by both the Second Circuit and Tenth Circuit. *Claude Neon Lights, Inc. v. American Neon Light Corp.*, 39 F.2d 548, 551 (2nd Cir. 1930) ("But officers or directors of a corporation will not be held personally liable for damages resulting from infringement where they do not exceed their duties as officers and directors. They become liable when they do exceed their authority **and use the corporation to carry out their own willful and deliberate infringement.**") (**Emphasis added**); *Southwestern Tool Co. v. Hughes Tool Co.*, 98 F.2d 42, 45 (10th Cir. 1938) ("An officer of a corporation participating in the corporation's manufacture and sale of an infringing article is not personally liable for damages flowing from such piracy unless he acts willfully or knowingly, or uses the corporation as an instrument to carry out his own deliberate infringement, or knowingly uses an irresponsible corporation with the intended purpose of avoiding personal liability.")

Prior to *Dangler*, the Sixth Circuit had already adopted the standard that a director or officer acting within the scope of its business cannot be liable for infringement or damages. *D'Arcy Spring Co. v. Marshall Ventilated Mattress Co.*, 259 F. 236, 242 (6th Cir. 1919) ("It is the rule in this circuit that such individual liability for damages and profits on infringement does not exist unless the officer inflicted the damages or received the profits otherwise than through the usual relations between officer and corporation."). In addition to the Second, Seventh, and Tenth Circuits, the First, Third, and Fourth Circuits have also adopted the requirement that an officer or director must have intentionally or willfully infringed a trademark to be held liable for infringement of another's intellectual property. *Nat'l. Cash Register Co. v. Leland*, 94 F. 502; *Fishman Transducers, Inc. v.*

*Paul*, 684 F.3d 187, 191-192 (1st Cir. 2012) (In trademark infringement cases under the Lanham Act, the First Circuit requires "willfulness…to allow either (1) more than single damages or (2) a recovery of the defendant's profits."); *Electronic Laboratory Supply Co. v. Cullen*, 977 F.2d 798 (3rd Cir. 1992); *Tillman v. Wheaton-Haven Recreation Ass'n.*, 517 F.2d 1141, 1144 (4th Cir. 1975).

Particularly, the Second Circuit has a long history of insulating corporate officers from intellectual property infringement absent intentional or willful actions or inactions. "It is contended that executive officers of a corporation cannot be held personally liable for infringements by the corporation. [However], this court held that they would be so held where they have infringed the patent as individuals or have personally directed infringement." *Saxlehner v. Eisner*, 17 F. 189, 190-191 (2nd Cir. 1906), citing to *Hutter v. The De Q. Bottle Stopper*, 128 Fed 283 (2nd Cir. 1904). In *Hutter*, the Second Circuit explained that where an injunction issues in the context of intellectual property infringement as against a corporation,

> There is little justification for making [the officers, agents, and servants] defendants except in rate instances where it is shown that they have infringed the patent as individuals or have personally directed infringement. **The courts of this circuit have frequently had occasion to criticize the practice and have**, in some instances, **imposed costs** upon the complainant **as a penalty for thus subjecting innocent parties to the expense and annoyance of defending themselves against unwarranted accusations.**

*Hutter* at 286-287. (**Emphasis added**). The key concept in all of these cases holding individual officers or directors liable, however, is that the individual defendants had some semblance of *mens rea* to affirmatively participate in the infringement.

Perhaps the better qualification or characterization of the conduct necessary to hold an officer or director liable is that which requires some sort of affirmative culpability on their part. See *Hitchcock v. American Plate Glass Co.*, 259 F. 948, 953-954 (3rd Cir. 1919) ("**Every voluntary perpetrator** of a wrongful act of manufacture, use, or sale of a patented article becomes ipso facto an infringer and is legally responsible;' and it therefore regards officers, directs, and agents

employing or authorizing or assenting to the use of a patented invention as infringers…") (**Emphasis added**); *Columbia Pictures Indus. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3rd Cir. 1984 ("An officer or director of a corporation who **knowingly participates** in the infringement can be held personally liable, jointly and severally, with the corporate defendant.") (**Emphasis added**); *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (4th Cir. 1975) ("If an individual **actively and knowingly** caused the infringement, he is personally liable.") (**Emphasis added**); *Tillman v. Wheaton-Haven Recreation Ass'n.*, 517 F.2d 1141, 1144 (4th Cir. 1975) ("[A] director who actually votes for the commission of a tort is personally liable, even though the wrongful act is performed in the name of the corporation…Proof that the director voluntarily and intentionally caused the corporation to act is sufficient to make him personally accountable…**[W]hen wrongful intent is an element of a tort…a director who acted innocently [can] escape liability.**") (**Emphasis added**); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1018-1019 (9th Cir. 185) ("There was substantial evidence to support the jury's finding of copyright infringement" where the individual defendants admitted to receiving the copyrighted material for over a decade, lifted from the copyrighted material all pictures, line drawings, and text.); *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1160-1161 (11th Cir. 2022) (To hold a corporate officer liable for infringement, a plaintiff must show that the officer "**actively and knowingly** caused the infringement.") (**Emphasis added**).

3. *The absence of actual damages bars Plaintiff's Lanham Act claims for lack of standing under Article III.*

In Section IV and Section V, Plaintiff claims that the Court should grant it relief from judgment based on two premises: Section IV states that "[t]he absence of actual damages does not extinguish Plaintiff's counterfeiting claims or eliminate its right to seek statutory damages under § 1117(c); and Section V states that, "Defendants' contention that no liability exists because the

completed sales were to Plaintiff's investigator is contrary to the express language of the Lanham Act." Plaintiff, however, misses the entire purpose of having to prove actual damages – the requirement of obtaining an actual injury which renders the appropriate and necessary element of standing under Article III.

a. The absence of actual damages extinguishes Plaintiff's alleged counterfeiting claims and precludes Plaintiff's right to seek statutory damages under Article III.

As discussed in Defendants' Motion for Fees, in order to invoke the jurisdiction of the federal courts under Article III, a plaintiff must have suffered an injury in fact. (Doc. 70, PAGEID 911). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 338-339, citing *Lujan*, 504 U. S., at 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351. However, "[a] 'concrete' injury must be 'de facto;' that is, it must actually exist." *Id*. at 340. It is not "necessarily synonymous with tangible. *Id*. (Id., PAGEID 911-912).

Plaintiff admits that it cannot prove actual damages but claims that it can obtain statutory damages instead for its claims of alleged trademark infringement. (Doc. 71, PAGEID 947). Plaintiff claims that because 15 U.S.C. § 1117(c) permits statutory damages, it does not have to prove actual damages. This logic is *non sequitur* because it presupposes that Plaintiff can obtain standing to invoke the Court's jurisdiction without suffering a concrete injury. Further, "under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 423 (2021), citing *Marbury* v. *Madison*, 5 U.S. 137, 1 Cranch 137, 170, 2 L. Ed. 60 (1803) (*Emphasis in the original*) (Doc. 74, PAGEID 1027).

In other cases in this Court where Plaintiff continuously sought the highest amount of statutory damages without proving a concrete injury, the Court stated,

> Previously in this litigation, the Court expressed reticence to impose statutory damages absent some relationship between the amount assessed and the injury suffered…*Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 154 (E.D.N.Y. 2013) ("Although statutory damages need not match actual damages, courts generally hold that statutory damages should bear some relation to actual damages suffered."); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (Plaintiff showing bare procedural violation of law with statutory damages provision does not have Article III standing absent concrete injury-in-fact resulting from said violation.)

*GS Holistic, LLC v. DC Wireless & Smoke Shop*, S.D. Ohio No. 3:23-cv-334, 2025 U.S. Dist. LEXIS 162992 at 5 (Aug. 19, 2025); *GS Holistic, LLC v. Mr. Puff Kenard, LLC*, S.D. Ohio No. 1:23-cv-709, 2025 U.S. Dist. LEXIS 176757 at 5 (Sep. 10, 2025). Nonetheless, the Court granted default judgment to Plaintiff after Plaintiff hired the same expert in this case to provide a blanket expert report covering regional "comparable" businesses to calculate damages and add a "deterrence multiplier." Id. at 5-6. As discussed in Defendants' Motion for Summary Judgment, Plaintiff's expert report possesses numerous flaws, mainly the fact that the expert utilizes financial records from "comparable" corporate entities in other Midwest states that have significantly higher total annual income than the "comparable" corporate entities in Ohio. (Doc. 66, PAGEID 472).

The "'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.* at 338. (Citations omitted). An "injury in fact" cannot be erased by Congress "by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id*. at 338-339, citing Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997). In other words, merely because the Lanham Act authorizes statutory damages for a violation does not

mean that Plaintiff can bypass the necessary requirement of standing in order to invoke this Court's (or any other court's) jurisdiction under Article III.

"To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). An injury is "particularized" where it "affect[s] the plaintiff in a personal and individual way." *Id*. "A 'concrete' injury must be 'de facto;' that is, it must actually exist." *Id*. at 340, citing Black's Law Dictionary 506 (10th Ed. 2014). Put another way, the injury must be "real." *Id*.

Plaintiff admits it did not sustain damages, in essence stating, "[t]he absence of actual damages does not extinguish Plaintiff's counterfeiting claims or eliminate its right to seek statutory damages under § 1117(c)." (Doc. 71, PAGEID 947). Plaintiff then contends, "[s]tatutory damages exist *instead of* proof of actual damages and profits." (Id.) (*Emphasis in original*). In support of this assertion, Plaintiff cites to *Coach, Inc. v. Cellular Planet*, No. 2:09-cv-00241, 2010 U.S. Dist. LEXIS 62033 at 5 (S.D. Ohio Jun. 22, 2010), which cites to *Cable/Home Commun. Corp. v. Network Prods.*, 902 F.2d 829, 850 (11th Cir. 1990) (Generally, statutory damages are awarded when no actual damages are proven, or actual damages and profits are difficult and impossible to calculate."). *Cable/Home* bases this holding on *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231-233, 73 S. Ct. 222, 97 L. Ed. 276 (1952). In *F.W. Woolworth*, the defendants admitted that they obtained profits from the infringement (which was intentional) and plaintiff proved that it directly lost customers as a result of the infringing behavior. *See generally, id*. What the Supreme Court ultimately held was that the Lanham Act "empowers the trial court in its sound exercise of judicial discretion to determine whether on all the facts a recovery upon proven profits

and damages or one estimated within the statutory limits is more just." *Id*. at 234. Therefore, the trial courts have discretion to determine whether to award actual damages or statutory damages. That does not, however, remove or otherwise negate the standing requirement under Article III.

In this case, Plaintiff's corporate representative and CEO, Christopher Folkerts ("Folkerts"), was unable to provide a single number for the amount of wholesalers that Plaintiff has in Ohio. (Doc. 66, PAGEID 475) (Doc. 66-12, PAGEID 718). Instead, Plaintiff utilized an expert to "correlate" damages based on average business sales of multiple Midwest states, of which numbers starkly contrasted with Defendants' actual numbers. (Doc. 66, PAGEID 472-476). It is axiomatic that correlation does not equal causation. Most importantly, in 2025, Plaintiff operated at a $1.4 million loss. (Doc. 66-12, PAGEID 706). If Plaintiff is operating at a loss and completely unable to identify the amount of wholesalers in the State of Ohio, Plaintiff has not suffered a particularized, concrete injury that invokes the standing requirement of Article III. In *F.W. Woolworth*, the plaintiff was at least operating at a profit and could readily identify specific and particular business relationships that it lost due to the defendants' intentional infringement of its products. Plaintiff was wholly unable to do the same and thus failed to reasonably identify a particularized and concrete injury suffered by Defendants' conduct. For the foregoing reasons, Defendants respectfully request that the Court find that no clear error of law occurred and deny Plaintiff's Motion for Relief.

b. Defendants' sale of the alleged infringing waterpipes to Plaintiff's investigators is relevant because Plaintiff cannot claim disgorgement of profits under 15 U.S.C. § 1117(a).

In its Complaint, Plaintiff seeks disgorgement of profits under 15 U.S.C. § 1117(a). "When a defendant is found liable for trademark infringement, the Lanham Act provides that a court may award disgorgement of profits to the plaintiff. **Willfulness is a prerequisite** to the order by a court of such disgorgement. **Even if a plaintiff shows willful infringement, it is entitled only to those**

**profits that are attributable to an unlawful use of its mark.**" *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 Fed. Appx. 459, 461 (9th Cir. 2020) (Emphasis added). In short, because Plaintiff cannot prove actual profits lost based upon its own testimony and admission, it is not entitled to any profits allegedly obtained by Defendants, even if Defendants were found liable. Further, even if the Court did determine that profits were measurable, Plaintiff would still not be entitled to any monetary damages because the damaged waterpipes caused Defendants to actually lose $150.00 in this case. (Doc. 66, PAGEID 473-474). Put another way, Plaintiff sued Defendants, put them out of business, and forced them into early retirement for a profit *loss* of $150.00.

Importantly, in the absence of actual damages, to support an award of profits through disgorgement, "a plaintiff must ordinarily show that the defendant intended to benefit from the goodwill or reputation of the trademark holder." *Western Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273-1274 (10th Cir. 2005). The Third, Fourth, Fifth, and Sixth Circuits assess six (6) factors in determining the equitable nature of a damage award for violation of the Lanham Act: "(1) whether the defendant had the intent to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting his rights; (5) the public interest in making the conduct unprofitable; and (6) whether it is a case of palming off." *Synergistic Int'l., LLC v. Korman*, 470 F.3d 162, 175 (4th Dist. 2006), citing *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005); *Quick Techs., Inc. v. The Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002). *See also La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 75 F.4th 607, 610 (6th Cir. 2023).

Applying the six factor test to the case at bar: Defendants did not have the intent to confuse or deceive. As previously discussed, at all relevant times, they believed they purchased authentic products from a third-party wholesaler. No sales have been diverted, as Plaintiff's own CEO could

not even identify the amount of "authorized" retailers it had in the State of Ohio, making damages impossible to measure. Defendants have gone out of business due to this litigation, ended up making a negative profit (as discussed in the Motion for Summary Judgment), and it would be inequitable to impose further damages upon them to reward a corporation operating at a net loss for 2025, and that initiates exorbitant trademark litigation cases against small businesses across the country (to the benefit of approximately $8.1 million). Plaintiff did not unreasonably delay asserting its rights. The public has a greater interest in ensuring that the judicial system is respected and honored by not filing meritless cases where there were no measurable damages even sustained to begin with as opposed to ensuring that small businesses remain in business despite the purchase of allegedly infringing products where such purchasing were not done with any intent or willfulness to infringe a trademark and particularly where, as here, the individual defendants did not even recognize the brand seeking to hold them liable.

Finally, this case does not involve instances of "palming off," which occurs where a "defendant used its infringement of the plaintiff's mark to sell its own products to the public through misrepresentation." *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 75 F.4th 607, 610 (6th Cir. 2023). Palming off occurs "there the plaintiff's and defendant's goods are in direct competition, and the confusion is over the source of their origin." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, FN 19 (W.D. Ky. 2010). In essence, "palming off" typically occurs between competitors; the parties to this case are not competitors and thus, this factor does not apply.

Despite the fact that Defendants have already proven their profits were *de minimis*, if any, in order to obtain an accounting, Plaintiff must show "not only that the infringer infringed, but that he did so with the **deliberate intent to cause confusion, mistake or to deceive purchasers**; in

other words, to purposely palm off the infringer's good as those of the infringed." *Nalpac, Ltd. v. Corning Glass Works*, 784 F.2d 752, 755 (6th Cir. 1986). If Defendants believed that the waterpipes being sold were legitimate and authentic to Studenglass, Defendants could not possibly have deliberately intended to cause confusion, mistake, or to deceive purchasers. The individual that "palmed off" the waterpipes in this case was the third-party vendor, Mohammad, that Defendants purchased the waterpipes from. Thus, even if the Court considers this factor, it weighs in favor of Defendants.

Further, "because the [Lanham] Act is grounded in equity and bars punitive remedies, an accounting [under 15 U.S.C. § 1117(a)] will be denied in a trademark infringement action where an injunction will satisfy the equities of the case." Safeway Transit, LLC v. Disc. Party Bus, Inc., 954 F.3d 1171, 1177-1178 (5th Cir. 2020). In its Complaint, Plaintiff requests the Court to enjoin Defendants from participating in a variety of activities related to the alleged infringement, including, but not limited to, using, purchasing, offering, selling, displaying, or marketing counterfeit Studenglass products. (Doc. 1, PAGEID 13). The requested remedy of an injunction, however, is moot except to deter future conduct because all of the waterpipes were either purchased by Plaintiff's investigators, broken, or (as to the last remaining one) destroyed once Wahdan became aware of the suit. (Doc. 66-14, PAGEID 876). Based on Safeway Transit, even if the Court were to reverse its decision on summary judgment, it should only impose an injunction prohibiting the sale of future alleged counterfeit waterpipes to satisfy the equities of the case. However, Defendants have no intent to involve themselves in any way related to Plaintiff and its products, as seen by the destruction of the last remaining waterpipe. Defendants have since gone out of business due to these lawsuits. For the foregoing reasons, Defendants respectfully request that the Court find that no error of law exists and deny Plaintiff's Motion for Relief.

*4. The Declarations of Wahdan and Shoman meet the requirements for Civ. R. 56 evidence to be considered in ruling on summary judgment.*

Plaintiff claims that Wahdan's Declaration lacks the proper foundation for translation under Evid. R. 604 because Shoman's Declaration was filed on July 2, 2026 (one day after the summary judgment deadline) and conflates that the translation was performed on June 26, 2026 but Shoman's Declaration was executed July 2, 2026. Looking at Shoman's Declaration, it is clear that it was electronically signed. Shoman travelled from Indiana the weekend before the deadline for summary judgment to translate Wahdan's Declaration from English to Arabic, thoroughly explain to Wahdan exactly what it said, and ensure that Wahdan understood the translation and implications of his testimony. Thereafter, Wahdan and Moneer executed their Declarations on July 1, 2026, when the undersigned's Legal Assistant personally travelled to witness their signatures and obtain the original wet signature copies. Shoman, who was travelling back to Indiana at the time, signed his Declaration electronically via Adobe PDF upon his arrival. This does not, in any way, make the Declarations ineffective; if nothing else, it supports the assertion that the declarants fully understood their testimony and took the requisite time to comprehend and evaluate said testimony.

Plaintiff next takes issue that Shoman's Declaration does not specifically identify what was translated from English to Arabic and whether Shoman was competent to translate Wahdan's Declaration. Shoman's Declaration states, "I am fluent in both English and Arabic and am competent to translate Wahdan's Declarations in both English and Arabic." (Doc. 71). Further, Shoman declares, "[o]n June 26, 2026, I translated both of Wahdan's Declarations in support of summary judgment in both pending federal litigations, that Wahdan made on behalf of this corporate entities M.W. and PQR." (Id.). In short, Shoman is fluent in both English and Arabic and translated Wahdan's Declarations in both cases from English to Arabic. The dates are irrelevant. Shoman travelled from Indiana for an extended stay with his family in Dayton, Ohio, and defense

counsel requested that the Declarations be signed in the presence of one of defense counsel's agents on July 1, 2026. At the time, Shoman had already left and was travelling, but signed his Declaration electronically upon returning to Indiana on July 2, 2026. The date that the Declaration was translated is also irrelevant. Translating the Declaration on June 26, 2026 permitted Wahdan to fully comprehend and understand its contents over several days prior to execution, which is preferrable over signing something merely because counsel instructed him to do so on the same date it was translated for him. But most importantly, this issue should have been raised at the summary judgment stage, prior to disposition, and not in a Motion for Relief. Plaintiff's counsel's failure to raise this issue at the appropriate time deems it waived. Therefore, the argument is moot and the Court should not consider any alleged deficiencies in the Declarations (of which Plaintiff's counsel is merely attempting to find a technicality to overturn the Court's decision) in rendering a decision on Plaintiff's Motion for Relief. For the foregoing reasons, Defendants respectfully request that the Court consider its Declarations as submitted with their Motion for Summary Judgment and deny Plaintiff's Motion for Relief.

## III. CONCLUSION

Plaintiff failed to establish that it is entitled to relief under Civ. R. 59(E) and Civ. R. 60(B). The Court did not apply a clear error of law and no manifest injustice occurred. There are no special circumstances entitling Plaintiff to relief under Civ. R. 59(E). Likewise, Plaintiff failed to establish excusable neglect. To the contrary, Plaintiff's counsel's failure to meet the deadline constitutes inexcusable neglect. Regardless, Plaintiff failed to even identify a single meritorious claim or defense that would entitle it to relief.

Plaintiff is barred from raising new arguments and new evidence that should have been brought before the Court for consideration prior to the disposition of summary judgment. Thus,

the Court should not consider Wahdan's Deposition in determining whether to grant Plaintiff relief from judgment. Even if the Court does consider Wahdan's Deposition, it only reinforces and proves what Wahdan said in his Declaration – the Individual Defendants had no prior knowledge of the Studenglass brand and had no intent to infringe Plaintiff's trademark.

Not only is Plaintiff precluded from claiming disgorgement of profits under 15 U.S.C. § 1117(a), Plaintiff is not entitled to any monetary damages because it suffered no particularized and/or concrete injury. Without a particularized injury, Plaintiff does not have Article III standing and therefore, the award of no damages (as opposed to nominal damages) was both equitable and appropriate. For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Relief.

Respectfully submitted,

FREDRIC L. YOUNG (0059544)
CARIN E. BIGLEY (0090231)
GREEN & GREEN, Lawyers
800 Performance Place
109 North Main Street
Dayton, Ohio 45402
Phone: (937) 224-3333
Fax: (937) 224-4311
E-mail: flyoung@green-law.com
cebigley@green-law.com
*Attorneys for Defendants,*
*M.W. & Sons, Inc., Mahmoud Wahdan,*
*and Moneer Wahdan*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been filed electronically through the Court's electronic filing system on the date stamped above. Notice was sent to all parties by operation of the Court's electronic system. Parties may access this filing through said system.

FREDRIC L. YOUNG (0059544)
CARIN E. BIGLEY (0090231)